R. H. DANIELS, guardian of MARY A. WARNER and ROSS WARNER, appellant, v. PAUL FACKLER et al., appellees.

No. 48282.

(Reported in 58 N.W.2d 309)

May 5, 1953.

Rehearing Denied September 25, 1953.

 █-

Cudahy & Wilcox, of Jefferson, for appellant.

Harris & Harris and Wm. C. Hanson, all of Jefferson, for appellees.

Hays, J.—Action to quiet title to certain real estate brought by plaintiff, as guardian, on behalf of his wards, Mary A. Warner and Ross Warner. The real estate is described as the South Half of the Northeast Quarter and the Northwest Quarter of the Southeast Quarter of Section 2, Township 85 North, Range 32, West of the Fifth P. M., Greene County, Iowa. The action is to set aside a deed, an escrow, and an agreement between the parties, executed August 10, 1949, under which the defendant Paul Fackler claims an interest adverse to the said Warners. While mental incompetency of the Warners, and inadequate consideration enters into the controversy, the chief claim is that of a breach of a confidential relationship which existed between the Warners and Paul Fackler. The trial court dismissed plaintiff's petition and he appeals.

Under the agreement, Exhibit A, Fackler agreed to move onto the real estate in question and to remain there during the lifetime of the Warners, paying to them, and to the survivor, a fair rental for the same. He also was to furnish them with such care as he may. Mary Warner, titleholder of the real estate, agreed to execute a will giving the property to Paul Fackler, subject to a life estate in Ross Warner; also, to execute a deed to Fackler, same to be held in escrow until the death of the survivor of the Warners. Exhibit B contains the instructions

to the escrow agent, the defendant Yates E. Allen. Exhibit C is a regular warranty deed conveying the real estate to Fackler. It does not contain a reservation. Under the instructions to the escrow agent he is to hold the deed until the death of the survivor of the Warners and then deliver it to Fackler, provided Fackler is still residing upon the land and has fulfilled his part of the agreement, Exhibit A.

█ █ The record clearly establishes, and the appellees, in effect, concede, that at the time of the execution of the instruments a confidential relationship existed between them and that Paul Fackler was the dominant party. Under such a contingency the rules of law applicable thereto are well established and are recognized by both parties. The leading case upon the question is Curtis v. Armagast, 158 Iowa 507, 138 N.W. 873. The rule is there announced that, where a confidential relationship exists between a grantor and a grantee a presumption against the validity of the conveyance arises, and the burden of upholding the same, as to its fairness, rests upon the grantee. Proof offered to overcome this presumption, to be sufficient, must be clear and convincing. To like effect see Merritt v. Easterly, 226 Iowa 514, 284 N.W. 397; Woolwine v. Bryant, 244 Iowa 66, 54 N.W.2d 759; 26 C. J. S., Deeds, sections 193, 208; 16 Am. Jur., Deeds, sections 40, 392 and 402. As bearing upon the fairness of the transaction there are several factors which are deemed to be of material importance, such as the age of the parties, their physical and mental status, their relationship, the extent of the property conveyed, the existence or absence of an adequate consideration, and an opportunity for, and benefit of, independent counsel and advice by the grantor at the time of the execution of the instrument. This requires an examination of the record as to the situation between the parties at the time of, and prior to, the execution.

At the time of the execution of the instruments Mary Warner was seventy-five years of age, her husband, Ross Warner, being seventy-seven. They were married in 1903, have had no children and have lived continuously upon the land in issue. Mary Warner received title thereto by inheritance. So far as appears from the record this is the bulk of their property. Paul

Fackler, age thirty-seven, is a farmer, married, and has been a resident of the same community as the Warners all his life. In 1938 and 1939 he lived upon the farm as a tenant, occupying a house located some 75 feet from the Warner home. At this time there arose a close friendship between the families. When the Facklers left the Warner farm in 1940 they moved to another one about five miles away, where they continued to live until the time in question. The friendship continued, the two families visiting back and forth and the Facklers doing many things to help the Warners.

In June 1949 Paul Fackler was helping Ross Warner at the farm, at which time there was a conversation between Fackler and Warner, later joined in by Mrs. Warner, in which the Warners stated that they were getting along in years and unable to carry on alone. They wanted Fackler to have the place when they were gone and "would he consider coming back." Mrs. Warner wanted to retain title to the farm so long as she lived, but wondered if something could be worked out. Fackler stated it was a matter for attorneys, and several were mentioned, among them being Wm. Hanson, of Jefferson. At the request of the Warners, Fackler consulted Hanson, who said it could be arranged. No decision was made by Fackler at this time. In August, after repeated talks with the Warners, he took them to see Mr. Hanson at Jefferson. At this time, after much discussion, the Warners suggested that Orville Harris, another attorney at Jefferson and with whom they were acquainted, should be consulted; that the two attorneys should confer and draw up the necessary papers and bring them to the Fackler home to be signed. On August 10 Fackler took the Warners to his home and sometime later in the evening the two attorneys came. For a matter of two to two and one-half hours the papers which had been prepared were examined and discussed. Many questions were asked by the Warners and answered by Mr. Harris. The papers were then signed by the necessary parties, with no change made except that at the suggestion of the Warners the name of Yates Allen was inserted as the escrow agent. The deed and escrow agreement were delivered to Mr. Allen, who produced the same in court at the trial.

Following the signing of the papers, Fackler commenced to make improvements on the house into which he intended to move, and to repair the barn, fences and outbuildings. At the time of the trial he had spent, or obligated himself, to the amount of $3771 for such purpose. It was arranged that the tenant then on the farm would change farms with the Facklers, and in December 1949 he moved with his family into the house which he had formerly occupied. The Warners were both feeble and Mrs. Warner had become very nervous. They were much dependent upon the Facklers. Mrs. Fackler did their washing, ironing and mending; she prepared many of their meals, taking them to the Warner home. Mr. Fackler ran errands, took them to the doctor when necessary and generally looked after them. It is nowhere claimed that Fackler failed to pay a reasonable rent or was remiss as a tenant.

In 1951 plaintiff, who is a nephew of Ross Warner, was appointed guardian for both Mr. and Mrs. Warner, the same being made upon their own application. The friendly relationship that had formerly existed terminated and became very strained, especially as to Mrs. Warner. This action was commenced almost immediately after the appointment of the guardian was made. At the time of the trial, in 1952, the Warners were unable to recall the incidents attending the signing of the papers, and in fact could not recall having applied for the appointment of a guardian. The facts as to the circumstances at the time of signing, and the conduct of the parties, are taken largely from the testimony of the Facklers and the neighbors.

Appellant contends that in 1949 Mary Warner was mentally incompetent to sign the papers. It appears that she was frail and extremely nervous. Medical testimony was offered to show that she was suffering from arteriosclerosis, but the physicians, when asked, would not say that her condition was such that she would not realize what she was doing. The trial court found she was mentally competent and we think the record sustains such finding. The issue as to mental condition is thus material only as a circumstance in connection with the general question of the presumed fraud of the Facklers.

Inadequate consideration is also alleged. Under the agreement, Exhibit A, mutual duties were imposed upon both parties. Fackler has expended, or obligated himself to the extent of, $3771 for physical improvements on the farm. He left his former farm, a better farm and a better house, to come to the Warner place. He has agreed to look after the welfare of the Warners and has done so in so far as he has been permitted to. There is no merit to this claim.

Most strongly urged by the appellant is the claim that the Warners were not allowed the advantage of independent counsel. It is contended that such is a prerequisite to overcoming the presumption which exists against the Facklers, citing Johnson v. Johnson, 196 Iowa 343, 191 N.W. 353. This court recognizes the importance of this factor but has never held that in the absence thereof the presumption must prevail. The Johnson case does not so hold. However, we think the record amply shows that such counsel and advice was had by the Warners. While they did not confer with Mr. Harris prior to the meeting on August 10, they spent some two hours talking over the papers with him, and he was there at the suggestion and request of the Warners. It was Mr. Harris to whom the Warners directed their questions and it was Mr. Harris who undertook to answer them. Both attorneys present, and who prepared the papers, are of unquestioned ability and integrity. There is nothing in the testimony of any witness, or in the papers themselves, that shows an unfair advantage was taken or that the papers failed to embody the things desired by the Warners.

The trial court found that the appellant had failed to establish mental incompetency and inadequate consideration; that the appellees had, by clear and convincing proof, overcome the presumption against the fairness of the instruments. The record sustains such finding, and the decree of the trial court should be and is affirmed.—Affirmed.

All JUSTICES concur.