PERCIVAL-PORTER Co., Appellant, v. JESSE OAKS and LYDIA OAKS.

Bond for deed: EVIDENCE OF TRUST. A recorded bond for a deed is
1 sufficient evidence that the obligee holds the legal title to the land under an obligation to convey it when the indebtedness recited therein is paid.

Bond for a deed: SURRENDER OF CONSIDERATION: EFFECT. The vol-
2 untary surrender of a note evidencing the amount due under a bond for a deed, with words indicating that it was surrendered as a gift, operates to release any beneficial interest the original owner had in the land.

Laches. The fact that the beneficial owner of property permitted
3 the holder of the legal title to collect rents to reimburse him for advancements, and delayed for three years after the quitclaim of the property to another to institute proceedings to

recover the full legal title, did not under the circumstances amount to such laches as to defeat the beneficial owners interest in the property.

**Evidence:** TRANSACTIONS WITH ONE SINCE INSANE. The fact that one's mind and memory was clouded by reason of extreme age and that he could converse only with difficulty on account of paralysis, was insufficient to show insanity under Code Section 4604, prohibiting the examination of a witness as to a personal transaction with one since insane.

**Continuance.** The courts discretion in overruling a motion for continuance on the ground of absent witnesses, which is not filed until the case is called for trial will not be interfered with on appeal, where it is not clear that the ground for continuance might not have been sooner discovered.

**Trusts:** LIMITATION OF ACTIONS. An action to enforce a trust in real property which is instituted within ten years from the origin of the cause of action is not barred.

**Trusts:** ACCOUNTING FOR RENTS AND PROFITS. The beneficial owner of property is entitled to an accounting of rents and profits received by the holder of the naked legal title, in an action to enforce the trust.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

MONDAY, MARCH 12, 1906.

ACTION in equity to quiet title to a certain lot in Des Moines. Defendants claim that they are the owners of the lot, and entitled to immediate possession thereof, by reason of a title bond, and in a cross-petition ask that plaintiff be required to account for rents and profits realized from the property while in possession thereof, that they have an order putting them into immediate possession, and that their title be quieted as against the claims of the plaintiff, and all persons claiming by, through, or under it, and, further, that plaintiff be required to execute to defendants a deed for the lot.— *Affirmed.*

*Charles O. Holly,* for appellant.

*Jayne & Hoffman* and *Berryhill & Henry,* for appellees.

McCLAIN, C. J.— Both parties claim title to the lot in controversy under one Aristarchus Cone, who acquired title thereto in 1890 by conveyance from one Vorse, and who in May, 1900, conveyed the lot by quitclaim deed to his niece, Mrs. Miller, who in May, 1903, conveyed by warranty deed to the plaintiff company, subject to a contract of sale to Eva M. Colburn and William H. Patterson, executed in March preceding. The claim of defendants is that they purchased the lot from Vorse in 1889 for $2,000, and immediately took possession thereof, paying him about $400 in money and deeding to him in exchange another lot of small value, and as balance of purchase money agreed to pay about $1,600; and that in 1890, for the purpose of extinguishing this indebtedness to Vorse, they entered into an arrangement with Cone by which he paid the amount due to Vorse and took defendants' note for $1,600 and gave to defendants a bond for a deed, by which he undertook in the penal sum of $1,600 to convey the lot to defendants on payment of said note; and that therefore, while Cone was the apparent holder of the legal title, the defendants had the equitable title, subject to the obligation to pay to Cone the amount of the note, for the security of which the legal title was vested in him; and that this bond for a deed was put on record in June, 1900, prior to the execution by Mrs. Miller of the contract to Eva M. Colburn and William H. Patterson, and prior, also, to her conveyance to plaintiff. Defendants further contend that their equitable title has ripened into a legal title by the extinguishment of their indebtedness to Cone; and that they are therefore entitled to be vested with the full legal title, free from any further lien on account of the money advanced to them by him; and that plaintiff should perfect the legal title in defendants by a conveyance, and should account

for rents and profits received since defendants became entitled to the possession and legal title on the extinguishment of their obligation to Cone.   It is practically conceded that, as Mrs. Miller acquired any right which she may have had by quitclaim deed, and, before the execution of any contract on her part with reference to the property and prior to the conveyance to plaintiff, defendants' bond for a deed was on record, plaintiff is not an innocent purchaser without notice, so far as defendants' rights in the premises are concerned, and that it stands in no better position with reference to the property than Cone himself would occupy, had no conveyance by him been made.

· The questions of fact involved in determining the rights of the parties so far as there is any controversy are, first, whether Cone held the legal title as security only, subject to the obligation to convey under his bond for a deed on the extinguishment of the indebtedness of defendants to him; and, second, whether such indebtedness had been in fact extinguished.  As to the first question, we think there is substantially no conflict in the evidence.   Defendants had purchased the property from Vorse, and made a substantial payment on the purchase price before Cone had any connection whatever with the property, or any interest in it; and it clearly appears, not only from the testimony of Mrs. Oaks, who was his wife's sister, but also from declarations shown to have been made by him at various times, that he took title to the property for the purpose of assisting the defendants to acquire and hold it as their homestead.   Indeed, the bond for a deed itself is sufficient evidence that Cone held the legal title, subject to the obligation to convey whenever the indebtedness of defendant to him should be extinguished.

As to the second question — that is, the extinguishment of the indebtedness — there is more difficulty; but we think it is established by a preponderance of the evidence, and without serious conflict, that in 1894, when Cone's wife was very

1. BOND FOR A DEED: evidence of trust.

sick, and when defendants were visiting Cone and his wife
at their home near Muscatine, Cone delivered
to Mr. Oaks the $1,600 note, accompanying the
delivery by words indicating the intention that

2. BOND FOR A
DEED: surren-
der of consid-
eration: effect.

it was surrendered to him as a gift, and that he should
retain the bond, which would entitle him to a deed, and fur-
ther that the note, after being retained for some time in the
possession of defendants, was destroyed by them. The in-
tention that this surrender of the note by Cone to defendants
should operate as an extinguishment of their obligation to
him to make any further payment of the previously existing
indebtedness is supported by proof of declarations made by
him at various times, and we know of no rule of law which
would prevent such a relinquishment by way of gift from
operating as a release of any beneficial interest which Cone
had in the property. If the obligation of defendants to
Cone was voluntarily extinguished, then from that time he
held the legal title as a naked trust for defendants, who
thereby became full and complete owners of the equitable
title, with the right to assert such equitable title against
Cone and his grantees, and may enforce their rights as
against plaintiff, and compel the conveyance to them by
plaintiff of the naked legal title, unless this right has been
lost by some conduct or omission on their part constituting
laches or otherwise barring their right to relief.

It is contended for appellant, however, that the conduct
of Cone and of defendants with relation to the property
has been such as to negative the mutual understanding that
Cone's interest in the property was extin-
guished by the surrender of the note, and

3. LACHES.

special reliance is placed on the fact that, although defend-
ants continued to occupy the premises until 1891 and sub-
sequently to collect rent therefor from a tenant until 1893,
Cone then assumed the control of the property and collected
the rents in his own name and right from that time until
after the conveyance to Mrs. Miller, without objection on

the part of defendants or any assertion on their part of a right to have the rents after the alleged extinguishment of their indebtedness by the delivery of the note to them in 1894. But we think this situation sufficiently explained by evidence tending to show that in 1893 a verbal agreement was made between defendants and Cone, by which Cone undertook to pay the taxes and some special assessments against the premises, and to keep them in repair, and was to be allowed to collect the rents and apply them on the taxes and expenses for repairs, and in liquidation of the indebtedness of defendants to him; and it does not appear that when this indebtedness was extinguished in 1894, by the surrender of the note, his advances for taxes, assessments, and repairs had been extinguished. As the amount of these advancements remaining unsatisfied in 1894 is not shown, we are unable to say for what further length of time he was entitled to collect the rents in order to satisfy such advances, and the mere fact that he may have been allowed to collect the rents beyond the amount necessary to repay such advances would not necessarily negative the claim on the part of defendants that they had become vested with the full right and equitable title to the property on the surrender of the note in 1894. It must be borne in mind that defendants were relatives of Cone's wife, who died in 1900, and that until the time of her death the relations between defendants and Cone were friendly, and that Cone, as a man of ample means and without a family dependent upon him, other than his wife, was professing to be, and as the evidence shows was, genuinely interested in and solicitous for the welfare of his wife's sister and her husband, who was an invalid and unable to earn a living. It would not be strange, therefore, that the defendants, while these friendly relations continued, and while they were in many ways obligated to Cone for assistance and support, should refrain from demanding of him a strict accounting for any rents he may have received beyond

the advancement, for which he was entitled to reimbursement. Not until after the death of Cone's wife did he change his attitude towards defendants, and apparently under the influence of his niece, Mrs. Miller, and one Hunter, who had been reared by him as a member of his family, conceived the idea that he had full and complete title to the property, and by conveying this title to Mrs. Miller by quitclaim deed disavowed his ownership of the naked legal title in trust for these defendants.

The suggestions just made sufficiently dispose, also, of the claim of plaintiff that defendants have forfeited their rights in the property by laches. No one has been misled by the failure of the defendants to more promptly assert their rights; for, as already indicated, defendants' bond for a deed, executed to them by Cone, was recorded in 1900, within two or three months after the quit claim to Mrs. Miller, and there is no evidence whatever that Mrs. Miller parted with any consideration or incurred any expense in reliance on the failure of defendants to assert their rights in the property. After the recording of the bond for a deed, all the world was charged with notice of their claims, and the mere delay for three years thereafter to institute legal proceedings to acquire the full legal title could not be charged to them as laches.

It is further contended, however, for appellant, that the trial court erred in the admission of certain testimony on which some conclusions of fact reached by the trial court, 4. EVIDENCE: transactions with one since insane. and also by us in the previous statement of facts as supported by the evidence in the record, and that, if this evidence had been excluded by the trial court, there would not be adequate proof of the conclusions of fact on which defendants rely. Without discussing these objections in detail, it is sufficient to say that they are predicated upon the claim that at the time of the trial Cone was insane, and that the testimony objected to relates to conversations and transactions between him and the de-

fendants as to which the defendant Mrs. Oaks, who alone was examined as a witness, was incompetent to testify. It is sufficient to say with reference to this objection that it does not sufficiently appear that Cone was insane, within the provisions of Code, section 4604. But one witness testified on this point, and while his testimony tends to show that Cone's mind and memory were clouded, and he was extremely feeble in body on account of old age, and was able to converse only with great difficulty, being afflicted at that time on account of a stroke of paralysis, it does not show such a condition of mind as to amount to insanity. There is no showing that any effort was made to take his testimony, or that it would have been impossible on account of his mental condition to secure his testimony, if the attempt had been made.

Error is assigned in the overruling of a motion for continuance on account of the inability of plaintiff to secure the testimony of certain witnesses. But we are not satisfied that there was such a showing, espe-
5. CONTINUANCE. cially as to the diligence of the plaintiff in attempting to procure its testimony, as to justify our interference with the action of the trial court. The application for a continuance was not made until after the cause was called for trial, and it did not sufficiently appear that the plaintiff could not by reasonable diligence sooner have discovered the grounds urged for such continuance. See Code, section 3666. The ruling of the court was necessarily based on the sufficiency of the showing as to a complicated state of facts relating to the diligence of the plaintiff, and there is not such an absence of support in the record for the action of the court as to justify our interference. We interfere with the ruling of the court in such matters with great reluctance, and only when a plain case of abuse of discretion is made out. *Bays v. Herring,* 51 Iowa, 286; *Woolheather v. Risley,* 38 Iowa, 486; *Walker v. Scofield,* 39 Iowa, 666; *State v. Stegner,* 72 Iowa, 13.

What we have said as to the facts established by the evidence disposes of the claim that defendants' action to enforce their rights in the property has become barred by the statute of limitations. If their right to have the legal title vested in them did not accrue until in the year 1894, then they are not barred under any view of the evidence; for their action was instituted in 1903.

*6. Trusts: limitation of actions.*

If the conclusions already reached with reference to defendants' rights in the property are correct, then they are entitled to the rents and profits received by plaintiff during the time plaintiff was holding the mere naked legal title for defendants, and the judgment against plaintiff for $146 on account of such rents and profits should not be interfered with.

*7. Trusts: accounting for rents and profits.*

We reach the conclusion that the court committed no errors of law, and that defendants were entitled to the decree which was entered in their favor, and such decree is therefore *affirmed.*