HARRY L. CHERNISS, Administrator, Appellee, v. MARGARET THOMPSON et al., Appellants.

No. 39655.

DECEMBER 13, 1929.

*Reed A. Flickinger,* for appellants.

*Kimball, Peterson, Smith & Peterson,* for appellee.

EVANS, J.—The plaintiff is the present administrator of the estate of Sophia Rief, who died in May, 1926. She left surviving her, as her heirs, two sons and four daughters, of whom the defendant Margaret Thompson was one. The estate left by her comprised a bank deposit of more than $7,000. It comprised, also, the note in suit, as claimed by the plaintiff.

It is undisputed that, in September, 1924, the decedent sold to the two defendants her distributive share in her husband's real estate, for the sum of $4,860, represented by promissory note signed by Margaret and her husband. The only dispute in the evidence as to a description of the note was on the question of its due date, and on the question whether it bore interest or not. The defendants testified that the note was dated October 1, 1924, to become due in five years, without interest. The contention, on the other hand, was that the note bore 6 per cent interest, and was drawn to become due in two years from date. This latter contention was sustained by the district court in its finding, and the finding has sufficient support in the evidence.

The major issue was, and is, whether the defendant Margaret had received the note from her mother as a gift.

The defendants produced two witnesses, each of whom testified directly to the fact that a gift was made by the deceased to Margaret on the 3d day of July, 1925. This testimony was not contradicted by any direct evidence. From the nature of the case, it could not be so contradicted. The event, if such, occurred between the deceased and Margaret, in the presence of these two witnesses, and of none other. Both witnesses were closely related to the defendant, John Thompson, one of them being his sister. The plaintiff relies upon evidence of the conduct of Margaret over a long period of time, since the date of the alleged gift, and of her conversations, comprising many admissions. To these circumstances we direct our consideration.

Mrs. Rief, the deceased, had made her home, since the death

of her husband, in 1922, with Margaret. Immediately after the death of Mrs. Rief, and on May 26, 1926, Margaret filed a petition for the appointment of her husband as administrator of the estate, and he was so appointed. He acted as such administrator until December, 1927, when he resigned because of his adverse interest in this controversy. Shortly after the death of the decedent, Margaret reported that she was unable to find this note. She made much search for it among her mother's effects. She solicited the help of some of the other heirs in making such search. Her sister-in-law joined with her for a very thorough search among the effects of the decedent and in the home of the Thompsons. Her supposition purported to be that her mother might have sent the note to some of the other heirs. After a time, and in pursuit of the efforts to find the note, the attorney (Flickinger) for the administrator directed a letter to each of the other heirs, making inquiry therefor. This letter reflected the attitude at that time of Mr. and Mrs. Thompson on that subject. It was in part as follows:

"In connection with the estate of Sophia Rief, Mr. & Mrs. Thompson were indebted to her at the time of her death in the amount of $4,800.00 she had a note signed by Mrs. Thompson and endorsed by John representing this indebtedness. She also made her home with the Thompsons.

"This note they have been unable to locate at any time since the death of Mrs. Rief and they do not know where it is. There should be some arrangement made for the payment of this note before the estate is closed and before a distribution is made and my purpose in writing this letter is to inquire what if anything you may know about this note, if you know nothing about it, I wish you would write me a letter stating that you know nothing about it.

"We are expecting to close this estate as soon as some satisfactory arrangement can be made regarding this particular note and if you will kindly answer this letter promptly you will be expediting the receipt by you of your interest in your Mother's estate."

One of these heirs, Mrs. Christensen, lived in California. She carried her letter of inquiry to her banker, who replied thereto on behalf of Mrs. Christensen, by making further inquiry.

Replying to the banker's letter, the attorney wrote, in part, as follows:

"The Thompsons are ready, able and willing to pay the note whenever it can be marked paid and delivered to them, and if delivery of the cancelled note cannot be made, we must follow a procedure outlined by our Statute in such matters," etc.

No discovery resulted from these letters, and progress in the settlement of the estate was prevented. After the expiration of twelve months, and in August, 1927, the resident heirs arranged for a meeting in the office of the attorney, to consider what step was necessary to be taken. They met at the appointed place, and were advised by the attorney that an indemnity bond for the protection of Mr. and Mrs. Thompson would have to be made and signed by all the heirs. At that meeting it was agreed by all present that Margaret should receive a compensation of $1,275 for the care of her mother. Later in the course of the conference, and in connection with the advice of the attorney that a bond would be required, Margaret suddenly announced that her mother had given her the note. She gave no details of the method of the gift, other than appears in the following quotation from the testimony of her sister:

"She [Margaret] says, 'I won't sign nothing.' 'Well,' he [the attorney] says, 'there will have to be a bond signed,—that is, to make you safe.' She [Margaret] said, 'Well; I won't sign anything.' He [the attorney] says, 'What is the reason?' 'Well,' she [Margaret] says, 'I consider when mamma give me this note, my mother give it to me.' 'Give you this note?' 'Yes, I consider when she made away with this note, my mother gave it to me.'"

The foregoing testimony was not denied by either defendant, as a witness. At the time of this pronouncement by Margaret, her husband stated that he had never heard of it before. As a witness, he testified also that the fact of gift, if such, had never been communicated to him prior to the August conference.

Each of the two witnesses who testified to the alleged gift testified also that the subject had never thereafter been mentioned in any conversation with this defendant. One of these witnesses had visited with her a number of times since August,

1927, and before the trial, but had had no conversation with her at any time upon the subject.

Needless to say that the conduct and conversation of Mrs. Thompson at all times up to the August, 1927, conference were apparently highly inconsistent with her pronouncement at that conference. If there was any explanatory fact or circumstance which would harmonize them, it must have been within her knowledge. Though used as a witness in her own behalf, she offered no explanation of her inconsistent conduct. Her testimony was confined to a very limited scope, descriptive only of the terms of the note as pertaining to its due date.

Needless that we pursue further the details of the evidence. We think the circumstances herein indicated in a general way are so significant and persuasive as to outweigh the direct evidence.

The decree of the district court is, accordingly,—*Affirmed.*

ALBERT, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.