WILLIAM LAUFERT, appellant, v. CLARA WEGNER et al.,
appellees.

No. 48413.

(Reported in 62 N.W.2d 758)

Feburary 9, 1954.

Mote & Wilson and Haupert & Robertson, all of Marshalltown, for appellant.

Willard F. Russell, of Toledo, and Boardman, Cartwright & Druker, of Marshalltown, for appellees.

Hays, J.— ▮▮▮ Suit in equity by the grantor to set aside certain conveyances of real estate as fraudulent. Decree for defendants, the grantees, and grantor, plaintiff, appeals.

At the outset, it must be conceded that the deeds are presumed to be fraudulent against the appellant. Grantor was placed under permanent guardianship on May 8, 1951, and the deeds were executed May 28, 1951, which apparently brings the transactions within the scope of section 670.10, Code of 1950. It also appears that in two of the four deeds in question, the grantee is Clara M. Wegner, who was at the time the duly appointed, qualified and acting guardian. It has long been the established law in this state that equity will take cognizance of transactions between parties standing in a fiduciary or confidential relationship, and will grant relief where such relationship has been abused. Where such a relationship exists between a grantor and a grantee, a presumption against the validity of the conveyance arises and the burden of upholding the same, as to its fairness, rests upon the grantee. To overcome this presumption the proof must be clear, satisfactory and convincing. Curtis v. Armagast, 158 Iowa 507, 138 N.W. 873; Merritt v. Easterly, 226 Iowa 514, 284 N.W. 397; Woolwine v. Bryant, 244 Iowa 66, 54 N.W.2d 759; Daniels v. Fackler, 244 Iowa 1163, 58 N.W.2d 309.

▮▮ In the Woolwine case, supra, where the conveyance was to several grantees, one of them being the one who stood in a confidential relationship to the grantor, we held that even though the other grantees were innocent beneficiaries, the presumption at-

tached to the transaction, and that which taints one, taints all. While in only two of the four deeds, here in question, is Clara Wegner named as a grantee, all of the deeds were executed at the same time and as a part of the same transaction. We hold the rule announced in the cited case is applicable here.

This appeal presents strictly a fact question. Is the proof offered by defendants so clear, satisfactory and convincing as to overcome the presumed fraud?

Appellant was seventy-six years of age, a widower, and without issue when he executed the deeds. Clara Wegner, Anna Lynch and Edna Winterfeld are nieces; Theodore Henningsen is a nephew; Dorothy Beenken is a grandniece; and Wilbur Henningsen is a grandnephew. They and their spouses are the defendants. The only other nephew, Albert Rehder, is neither a grantee nor a defendant. Appellant owned 1020 acres of farm land; an undivided half interest in another 240 acres, the other half being owned by Clara Wegner and her husband; a residence property in Gladbrook, Iowa; and some personal property.

The deeds in question conveyed as follows: (1) S. ½ Section 34, Township 86, R. 16, Tama County, Iowa (referred to as the Jensen place), undivided ½ to Edna Winterfeld, ¼ to Wilbur Henningsen, and ¼ to Dorothy Beenken; (2) N. ½ Section 9, Township 86, R. 15, Tama County, Iowa (referred to as the Reinbeck place), undivided ½ each to Theodore Henningsen and Anna Lynch; (3) N.W. ¼ Section 21, Township 85, R. 15, and E. ½ N.E. ¼ Section 20, Township 85, R. 15, Tama County, Iowa (referred to as the Wiese place), grantor's undivided ½ interest therein to Clara Wegner; (4) Lots 1, 19 and 20, Blk. 9, Original Town of Gladbrook, Iowa (referred to as the home property), to Clara Wegner.

On April 26, 1951, appellant suffered a cerebral thrombosis and was taken to a Marshalltown hospital where he still is. April 28, 1951, he signed an application for the appointment of Clara Wegner as his guardian. The appointment was made by the court on May 8, 1951. May 28, 1951, the deeds were executed and also a will. October 11, 1951, the guardian asked the court to confirm a change of ownership of real property (being the conveyances in question). Order confirming was entered October

12, 1951. The deeds were recorded shortly thereafter. February 12, 1952, appellant petitioned for termination of the guardianship, which was granted July 2, 1952. This action was commenced March 3, 1952.

There appears to have been a very friendly relationship between all of the parties with Clara Wegner, who lived closer to appellant and was more intimate with him. Donald B. Kliebenstein (hereinafter referred to as Klieb) is a practicing attorney at Gladbrook and had been appellant's attorney for many years. He acted as attorney for Clara Wegner in the guardianship proceedings but never otherwise.

Clara Wegner was called as appellant's witness and her testimony is in substance as follows: She often visited appellant in his home, frequently taking him food. She found him helpless in his home on April 26 and sent him to the hospital. She was an almost daily visitor thereafter at the hospital until shortly before this action was brought. On April 27, 1951, appellant asked her to have papers prepared so she could look after his affairs, stating that Klieb would handle the legal matters. She went to Klieb's office and found he was out of town. She then talked with her banker and at his suggestion, Robert Powell, an attorney at Tama, prepared a voluntary application for the appointment of a guardian. On the 28th she and her husband took the paper to the hospital where appellant signed it. It was notarized by an employee at the hospital, Mildred Parkin. This paper was given to Klieb, upon his return, and he obtained the order of appointment on May 8, 1951. All papers in the guardianship matter were prepared by Klieb. She states, and it stands uncontradicted, that she had no knowledge of the execution of the deeds until about June 1, 1951, and then from Klieb.

Mr. Kliebenstein, as defendants' witness, in substance testified as follows: On May 26 he was notified that appellant wanted to see him and went at once to Marshalltown. From whom this notification came is not clear except that it was not any of the defendants. This was the first time he saw appellant since his illness. Appellant told him he wanted to deed certain parcels of land to his nieces and nephews, stating the various tracts and respective recipients. He also gave details as to contents of a

new will he wanted prepared. The question of gift taxes and expense was discussed. Appellant said, " 'Don, I want you to prepare these papers. I want to sign them. I want it over with and you hold them in your office. You can work out this matter of tax problems and so forth; and as long as the folks are going to pay the expenses, it doesn't make any difference to me.' " Only the two were in the room while the deeds were being discussed although he saw Clara Wegner at the hospital. At no time was he ever asked by any of the defendants as to this conversation with appellant.

He prepared the deeds and will and took them to the hospital on the 28th. He obtained a notary, through Mr. Cartwright, a Marshalltown attorney, who notarized appellant's signature to the deeds. The only ones present were appellant, Klieb and Mrs. Starr, the notary. It appears without dispute, from the testimony of both Klieb and Mrs. Starr, that the deeds were read over and discussed before being signed. Mrs. Starr left the room and Mrs. Lovejoy, the nurse, and Mrs. Tannatt, Klieb's secretary, came in and witnessed appellant's signing of the will. While it is claimed by Mrs. Lovejoy that Mrs. Wegner was in the room while Klieb was there, this is contradicted by Klieb, Mrs. Starr, and Mrs. Tannatt. Klieb took and retained the deeds and will.

On May 31, 1951, Klieb notified the various grantees of the execution of the deeds and asked that they call at the office, which they did. There the matter of the gift tax was discussed. It stands uncontradicted in the record by the testimony of all of the defendants that not until they received the letter from Klieb did they know of the execution of the deeds.

Thereafter, at Klieb's request, the law firm of Dickinson & Dickinson of Des Moines worked out the details of the gift taxes to be paid. They prepared what is called an "Agreement" which set out the details. This agreement was signed by appellant, as grantor, and Kliebenstein, as escrow agent, on October 2, 1951, and by all of the grantees on October 5, 1951. Under this agreement each grantee was to pay the amount therein set forth (total amount was $34,900), which they paid to Klieb. On October 11, 1951, Klieb prepared a "report of change in ownership of real estate with application for approval" which Clara Wegner

signed as guardian. On the 12th of October this was approved by the court and the deeds were recorded and delivered to the grantees soon thereafter. Appellant places much stress upon the fact that the "Agreement" states that on May 28, 1951, the grantor and grantees orally agreed as to the conveyances. While it is a statement at variance with the testimony of all the witnesses, we attach no significance thereto. Klieb says whatever information Dickinson & Dickinson had in preparing the "Agreement" was furnished by him; that in his talk with appellant on May 26, he had the impression that appellant had previously discussed the matters with the grantees. There is support in the record for this impression as we shall later discuss. Neither is the fact that this agreement was embodied in the report to the court and signed by Clara Wegner of any import in itself. Klieb prepared the legal papers and the guardian signed them. Such is the usual procedure.

Dorothy Beenken, a grantee, testified that in August 1950 appellant told her, " 'I am going to have a surprise for you one of these days. I am dividing up my land. You and Wilbur [her brother] are to have Henry's [her father's] share.' " On April 15, 1951, her grandmother's birthday, Wilbur and wife, Dorothy and husband, and children were at appellant's house at his invitation. At that time he said, " 'I want you to have the Jensen farm.' " It was to be in partnership with Mrs. Winterfeld, who was to have a half interest therein. In October 1951 they discussed the tax matter with him and he said he was sorry the gift tax came so high but that "in time why your farm will bring you in income and you will have it paid for." Sometime before the appellant took sick, she heard him say with reference to a sale of the home, "Oh, no, that house wouldn't be for sale because after he was gone, it was to go to his niece [Aunt Clara]; and she had already done a lot for him."

Clara Wegner, on cross-examination, testified that on her mother's birthday in April 1951 she, with her brother and sister, met with appellant. He told them he was going to convey certain properties to them. The properties later conveyed were the ones he mentioned at that time. "He told me he was going to give his home to me, but he wanted to live there as long as he lived." I

said, "Yes, why that was understood." The record shows that the home is not occupied, he has the key and could return any time to it.

Anna Henningsen Lynch testified that she first heard she was to receive property from appellant on April 15, 1951. Appellant told her the Reinbeck property he would like to give to her and her brother, Theodore; "the Jensen place, he thought, would be nice for Dorothy and Wilbur, and Edna Winterfeld; and my sister, Clara, he would like to have her have the 120 acres that Gerald lived on and he wanted her to have the house in town." Gerald is Clara's son and lived on the farm owned jointly by his parents and appellant. He did not say when he was going to make the gifts except that it was to be while he was still living.

H. Theodore Henningsen stated that in the middle of the winter (1950-1951) appellant had indicated to him that he was going to divide up his property among the children in the exact manner it was later conveyed. He again told him about it in April 1951, at the time of the birthday party.

Wilbur Henningsen testified that in the fall of 1950 appellant said he was to have a surprise for us some of these days. He discussed it more in detail in April 1951.

Edna Winterfeld testified that prior to 1951 appellant had made gifts to her of about $7500. In 1948 he said he was going to prepare deeds so that whenever the time came that he was not here any more, it would be prepared the way he wanted it. She was not present at the birthday party in April 1951. She visited with appellant in the hospital on May 10, 1951, at which time he said, " 'I am going to deed some property to you.' " He mentioned the Jensen place. She said to him, "That is up to you what you are going to do, because you will be doing it, if you feel you want to do this." He said, " 'Oh, yes, I just want to do it. I've got such an overhead. I paid $8000 in income tax this year, and that is just getting too much for me. I want you people to have the benefit of it.' " She visited appellant in the hospital on June 25, 1951, and thanked him. She again saw him October 4, 1951. Both times he said he was glad he had done it, and "wanted us to enjoy it."

Wills executed by appellant in 1948, 1950 and May 28, 1951, are in the record.

Theodore Henningsen and Anna Lynch were deeded approximately the same land as was mentioned for them in the 1948 and 1950 wills.

Edna Winterfeld, Wilbur Henningsen and Dorothy Beenken were deeded about the same land as was bequeathed in the 1948 will. By the 1950 will, Edna was given about the same, but Wilbur and Dorothy were given a different tract.

Clara Wegner, by the 1950 will, was to receive the same as was deeded, except that Lot 19, Blk. 9, of Town of Gladbrook, was omitted. Under the 1948 will, she was given the Gladbrook property, but a different tract of farm land.

All were given other gifts by both wills and were residuary beneficiaries. The will of May 28, 1951, makes no specific bequests of real estate. It provides that all property be converted into cash, and the nephews and nieces are named as the beneficiaries.

■ There is considerable testimony bearing upon the mental condition of appellant from the time he entered the hospital, with the usual conflict thereof. This is strictly a question of fact, and weight should be given to the findings of the trial court. Salem v. Salem, 245 Iowa 62, 60 N.W.2d 772. We think a fair evaluation of the record amply sustains the trial court to the effect that appellant's mental condition was such as to enable him to execute the deeds.

There is some contention that Clara Wegner stood in a confidential position to appellant and was the dominant party. Even conceding the meager record on this question warrants a finding of a confidential relationship, the record utterly fails to establish Clara as the dominant party. In fact it shows the contrary.

■ Under this record, eliminating the fact that Clara Wegner was guardian of appellant, there is absolutely nothing that would warrant setting aside these deeds. While it is true that the fact of the guardianship raises a presumption of fraud which casts the burden upon the defendants to overcome, we are satisfied that they have sustained that burden. It was merely a coincidence that the deeds were executed after a guardian was appointed; as the record amply shows appellant did what he had contemplated doing for some time, and regarding which the

guardian was totally ignorant. To hold otherwise would be to hold that all conveyances made by one under a guardianship in which the guardian is a beneficiary are conclusively fraudulent and void. We have never so held and are not prepared to do so now.

The decree of the trial court should be and is affirmed.— Affirmed.

All JUSTICES concur.