IN RE GUARDIANSHIP OF WILLIAM LAUFERT.

CLARA M. WEGNER, guardian, appellee, v. WILLIAM LAUFERT, appellant.

No. 48950.

(Reported in 79 N.W.2d 187)

1354

NOVEMBER 13, 1956.

Mote, Wilson & Welp and Haupert & Robertson, all of Marshalltown, for appellant.

Boardman, Cartwright & Druker, of Marshalltown, D. B. Kliebenstein, of Gladbrook, and Willard F. Russell, of Toledo, for appellee.

GARFIELD, J.—Trial of objections by the ward to the final report of his guardian resulted in approval of the report except in a few minor respects. The ward has appealed. We affirm the decision.

May 8, 1951, Clara Wegner was appointed guardian of the property of her Uncle William Laufert upon a petition filed by him under section 670.5, Codes, 1950, 1954. The petition stated "he is ill and desirous of being relieved for the time being of personal care of his property." February 27, 1952, the ward filed his petition to terminate the guardianship which alleged he "is mentally competent and alert and * * * capable of the management of his own business affairs. A guardianship * * * is no longer necessary." July 2, 1952, Laufert was discharged from guardianship and the guardian was ordered to file her final report. To this report the ward filed thirty-five objections.

This case involves the same William Laufert and Clara Wegner who were parties to Laufert v. Wegner, 245 Iowa 472, 62 N.W.2d 758. The cited decision upholds conveyances of valuable real estate from Mr. Laufert to Clara Wegner and his other nieces, a nephew, a grandniece and a grandnephew. A reading of the cited opinion will help to better understand the present controversy. Four of the objections (10 to 13) to the final report allege no satisfactory accounting is made for the real estate conveyed to Laufert's relatives as aforesaid. Parts of two other objections (34 and 35) are based on claimed invalidity of these conveyances. Laufert v. Wegner, supra, amounts to an adjudication against these objections and parts thereof.

I. This probate action is not reviewable de novo here but only upon the errors assigned. The trial court's findings have the force and effect of a jury verdict and, if supported by substantial evidence, will not be disturbed. In re Estate of Lenders, 247 Iowa 1205, 1212, 78 N.W.2d 536, 540, and citations. The record does not support appellant's suggestion the case was tried as an equitable proceeding. However, even if our review were de novo we would still affirm the trial court.

II. We have held four times the powers and duties of a guardian appointed upon the ward's own application under Code section 670.5 are the same as those of a guardian appointed upon the petition of a third party under section 670.2. In re Guardianship of Mikel and Helena Anderson, 247 Iowa 1292, 1296, 1297, 78 N.W.2d 788, 790, 791, and citations.

In some respects the Anderson case resembles the present controversy. There as here the guardianship was handled in the main as the wards desired. The cited opinion says, "And the fact that a ward is alert mentally and has a guardian appointed because of physical inability to manage his own problems creates a situation differing from the more common one where the ward is mentally incompetent." We also point out that a guardian's failure to secure prior authority and to file reports will not defeat his right to recover for services and expenditures in the absence of a showing of bad faith or loss to the estate. See also In re Guardianship of Husmann, 245 Iowa 830, 839, 64 N.W.2d 252, 257, which says that in a matter of this kind the court should endeavor to follow principles of fairness and justice.

It appears that when William Laufert asked Mrs. Wegner to act as guardian she was doubtful she could handle it, Mr. Laufert told her she would not have much to do other than take orders back and forth, her husband was to do the work on the farms at Laufert's order and Mr. Kliebenstein, Laufert's attorney for twenty years, was to do the legal work. In the main the ward, who was confined to a hospital, directed what was to be done by the guardian and her husband. Mr. Kliebenstein served as the guardian's attorney.

III. We consider now the more important objections to the guardian's final report.

The guardian did not list, or account for interest on, a promissory note of $11,000 signed by Mr. and Mrs. Wegner payable to Mr. Laufert. Existence of this note until February 28, 1951, is conceded. Interest was paid on it to February 27. The note was given for sums advanced to the Wegners without their request by Mr. Laufert, apparently as part of his plan to divide a large part of his estate among his relatives. He was without wife or issue. He also advanced large sums to other relatives.

There is substantial evidence these advancements were intended as gifts rather than loans to be repaid.

In any event Mr. Laufert sent for the Wegners on February 28, 1951, brought out the $11,000 note, directed Clara to put it in the stove and burn it, lifted the stove lid for that purpose and she did as directed. Mr. Laufert then said, "Now you don't owe me anything any more." This was further. in pursuance of his plan to divide much of his wealth about equally among his relatives and occurred more than two months before the. guardianship was instituted.

The ward's version of what occurred is somewhat different. He admits he handed the note to Mrs. Wegner but says he told her to hide it so if he died it would not be found and would not be a charge against the Wegners, that Clara thereafter burned the note because she said she had no safe place to keep it.

In June 1951 Mr. Laufert asked Mr. Wegner to make a new note to him to replace the former one but the request was not complied with. On another occasion the ward asked for the return of a gift made by him about two months previously—a sewing machine he had given the guardian's little daughter.

There is ample evidence to support the conclusion that the debt, if it was such, represented by the $11,000 note, was extinguished by gift from Laufert to the makers of the note. Consequently the guardian was under no duty to list the note or account for interest thereon. That a debt may be extinguished in this manner see Percival-Porter Co. v. Oaks, 130 Iowa 212, 216, 106 N.W. 626; annotations 37 A. L. R. 1144, 1146; 84 A. L. R. 383, 384, 385; 38 C. J. S., Gifts, section 47; 24 Am. Jur., Gifts, sections 72, 74. See also Cherniss v. Thompson, 209 Iowa 309, 228 N.W. 66; Darland v. Taylor, 52 Iowa 503, 3 N.W. 510, 35 Am. Rep. 285. Haldeman v. Martin, 205 Iowa 302, 217 N.W. 851, cited by appellant, is not in point.

■ IV. Appellant assigns error in the finding, contrary to his objections, that $34,900 reported to the court for sale of real estate was not properly guardianship money to be accounted for and that payment of $18,495 as gift tax was a proper expenditure of guardianship funds.

When appellant informed his attorney, Mr. Kliebenstein,

he wanted to convey the real estate involved in Laufert v. Wegner, supra, 245 Iowa 472, 62 N.W.2d 758, he prescribed the condition the grantees must pay the gift tax and expenses connected with the transaction. As the cited opinion indicates, Mr. Kliebenstein engaged the law firm of Dickinson & Dickinson of Des Moines to work out the details of seeing that this condition was met. They prepared an agreement, signed by Laufert, the grantees of the deeds and Kliebenstein, providing the grantees should pay Kliebenstein as escrow agent sums totaling $34,900, upon so doing he would deliver the deeds to them and would pay the expenses incident to conveyance of the properties.

The grantees complied with this agreement and Mr. Kliebenstein paid expenses totaling $5293.50. The main expense item was the fee of $4900 to Dickinson & Dickinson. Kliebenstein turned over to the guardian $29,606.50, the rest of the $34,900 he collected from the grantees of the deeds. From this sum the guardian paid the gift tax of $18,495. There is no claim the gift tax was less than the amount paid.

One item of expense incurred at the request of Dickinson & Dickinson was $500 for appraising the lands Mr. Laufert conveyed to his relatives. This appraisal was evidently deemed essential preparation for making the gift tax return. The guardian paid this $500 four months before she received the $29,606.50 from Kliebenstein. The court therefore charged the guardian personally with interest at 5% for four months ($8.33) on this disbursement.

We approve the trial court's refusal to compel the guardian to account for the full sum of $34,900 collected by the escrow agent from the grantees of the deeds. The effect of so doing would be to require the guardian to pay from her own funds the expenses incident to the conveyances, mainly the fee of the Des Moines tax attorneys for which she was in no way responsible. As previously explained these expenses were disbursed pursuant to the agreement to which the guardian was not a party. They were no part of the guardianship funds.

The guardian properly accounted for the amount the escrow agent paid her. It will be noticed this amount exceeds the $18,495 paid as gift tax plus the $500 appraisal fee by $10,611.50.

This surplus was evidently collected from the grantees as a cushion to protect against loss to Mr. Laufert if additional gift tax were later assessed.

Appellant says there is no provision of federal law authorizing a guardian to make a gift tax return under the circumstances we have here. We think this is unimportant if true. Concededly a gift tax was due in a sum not less than the guardian paid. The ward suffered no loss by the guardian's making the return and the tax was paid with money paid by grantees of the deeds to the escrow agent. If the escrow agent had paid the gift tax from the fund in his hands before paying over the rest of it to the guardian the net result would have been the same.

V. The guardian is criticized for not including in the gift tax return the $11,000 note referred to in Division III hereof. As stated, the gift of this note was completed more than two months before the guardianship was opened. In any event it appears Mr. Laufert then requested the Wegners not to divulge the making of this gift or make any record of it. He is estopped from making this complaint. In re Guardianship of Meinders, 222 Iowa 236, 268 N.W. 537; annotation 128 A. L. R. 4, 6, 30, cited in Anderson v. Schwitzer, 236 Iowa 765, 770, 20 N.W.2d 67, 70.

VI. Appellant complains of the court's refusal to vacate certain orders previously entered in the guardianship proceeding. The first order, made June 22, 1951, authorized the guardian to borrow $5000 and to extend a past-due note signed by Mr. Laufert held by a bank. The ward was then confined to a hospital at large expense, there were unpaid bills and insufficient cash with which to pay them. It is conceded there is no evidence the money borrowed pursuant to this order was paid out other than in the guardianship. The order appears to have been proper.

October 12, 1951, the court approved the conveyances subsequently upheld in Laufert v. Wegner, supra, 245 Iowa 472, 62 N.W.2d 758. The cited decision is conclusive against appellant's contention this order should have been vacated.

October 9, 1952, the court sustained the guardian's motion to strike objections 10 to 13 to her final report which, as previ-

ously stated, allege no satisfactory accounting is made for the real estate Laufert conveyed to his relatives. Parts of objections 34 and 35 based on claimed invalidity of these conveyances were also stricken. As we observed near the outset hereof, Laufert v. Wegner, supra, amounts to an adjudication against these objections and parts thereof. It was not error to strike them.

The remaining order appellant says should have been vacated, made September 26, 1952, authorized the guardian to employ as additional counsel Willard F. Russell and Harry Druker. The order was made pursuant to the guardian's application to which the ward filed his verified resistance, after the final report and objections thereto had been filed. The application states some of the objections amount to an attack upon the guardian's attorney, Mr. Kliebenstein, and it will be necessary for him to testify upon trial of the objections. He was in fact a witness. The final report and an intermediate report included in it by reference itemize receipts in excess of $65,000 and disbursements exceeding $50,000.

Since issues were drawn and hearing had as to the propriety of employing additional counsel to defend the guardian's accounting the order authorizing such employment was a final adjudication in the absence of fraud, mistake or collusion which is not claimed. Soppe v. Soppe, 232 Iowa 1293, 1296-9, 8 N.W.2d 243, 245, 246, and citations; In re Estate of Lorenz, 244 Iowa 338, 341, 56 N.W.2d 884, 886, and citations; In re Estate of DePenning, 244 Iowa 690, 701, 702, 58 N.W.2d 9, 15.

In any event the order of September 26, 1952, authorizing the guardian to employ additional counsel seems, under the circumstances, not to have been an abuse of discretion and it was not error to refuse to vacate it. See In re Trust of Freeman, 247 Minn. 50, 75 N.W.2d 906, 910; annotations 9 A.L.R.2d 1132, 1211 et seq.; 101 A.L.R. 806; 39 C.J.S., Guardian and Ward, section 165b. See also In re Estate of Rorem, 245 Iowa 1125, 1138-1141, 66 N.W.2d 292, 300, 301, 47 A. L. R.2d 1089; In re Guardianship of Ridpath, 231 Iowa 977, 984, 2 N.W.2d 651, 654.

The trial court held the guardian and her attorneys were entitled to compensation, the amounts thereof to be deter-

mined upon further hearing at a later time. We approve this holding. See authorities last above.

VII. In argument appellant seeks to hold the guardian personally liable for 1804 bushels of corn grown in 1949 and perhaps in part in 1950 on farms appellant owned. The argument is much broader than the objection (No. 6) pertaining to this matter.

In 1949 and 1950 Mr. Laufert borrowed from the Commodity Credit Corporation by sealing corn grown on his farms. He signed the original loan papers in 1949 and 1950 and, at the expiration of the loans, the first "resealing" papers which were approved January 15, 1951. At Mr. Laufert's direction the guardian signed papers September 30, 1951, to reseal this corn a second time. Early in 1953 the corn was delivered to the Commodity Credit Corporation in payment of the loans. The delivered corn, however, failed to pay the total loans with interest by about $2770. Some of this deficiency was due to spoilage during the long period the corn was under seal. There is no claim any of the seals were tampered with or that all the sealed corn fit for delivery was not delivered.

There is insufficient evidence to support a reversal of the trial court's holding the guardian accounted for the crops under government seal. It is not contended she was guilty of wilful misconduct. Appellant says she was negligent in not discovering spoilage of the corn and doing something about it. A guardian is required to exercise in the management of the ward's estate that degree of care and prudence that an ordinarily prudent person employs in the conduct of his own affairs. In re Guardianship of Brubaker, 214 Iowa 413, 416, 239 N.W. 536; In re Estate of Enfield, 217 Iowa 273, 274, 251 N.W. 637, 638, and citations; In re Guardianship of Moore, 227 Iowa 735, 737, 288 N.W. 880; 39 C.J.S., Guardian and Ward, section 76, page 119.

There is substantial testimony corn stored for such long periods sometimes deteriorates rapidly—"anything can happen to it most any time." The sealer carefully checked the quality in September 1951 and made routine checks of the corn at least once a month thereafter. Apparently he did not sooner discover

the spoilage. Part of the corn loss was due to shortage of quantity. This may reasonably have been due to causes for which the guardian was in no way responsible. The sealer may have substantially overestimated quantities. Rodents may have made inroads on it. The evidence suggests other causes not chargeable to the guardian.

VIII. The guardian paid about $1800 for a new oil furnace, fuel tank and oil, hot-water heater and tank and water pipes installed in appellant's home in Gladbrook in the fall of 1951. Appellant had conveyed the home to the guardian May 28, 1951, and the conveyance was upheld in Laufert v. Wegner, supra, 245 Iowa 472, 62 N.W.2d 758. However, both the Wegners and Mr. Laufert apparently understood he would live in the home upon his release from the hospital. The ward himself ordered the furnace and other equipment installed in the home, to which he expected to return, for his own comfort. He is in no position to object to this expenditure.

The ward also directed that the old furnace from his home, replaced by the new one, be installed on one of the farms he had conveyed to his relatives. The guardian paid about $100 for this work. The ward is in the same position with respect to this item. If a mentally competent ward insists that obligations of this kind be incurred he should not complain that the improvements are paid for.

Some other objections are disposed of by what we have just said. In January 1951 Mr. Laufert directed the installation of a water system on a 240-acre farm then owned by him and the Wegners in order to supply water to an adjoining 80-acre tract Laufert owned individually. He still owns this tract. This improvement was largely completed about two months before the guardian was appointed but had not been paid for. The guardian paid the bill, about $600 in all. She was ordered to turn over to Laufert the unused material left from this improvement.

The guardian paid $417 for fence material purchased at Mr. Laufert's direction to be installed on his 80 acres and on the line of the 240 acres just referred to. The material had been installed on the 80 acres but the line fence had not been built. The guardian was ordered to turn over the unused material to Laufert.

The guardian paid her husband $339 for work done by him at Mr. Laufert's request in connection with his property. Wegner submitted an itemized statement of his services and the amount paid appears to be reasonable.

IX. The ward objected to the guardian's failure to list in her inventory the household furniture and belongings in the Gladbrook home, the ward's automobile, corn sheller and threshing machine. This failure caused no loss to the guardianship. The furniture and belongings remained intact in the home except that the ward's watch and silverware were delivered to him at his request and his sewing machine, as stated, was given to the guardian's daughter at the ward's direction. The automobile was removed from the garage at the ward's home only twice— once at the ward's request and the other time while the new furnace was being installed.

There is evidence Mr. Laufert sold his threshing machine before the guardianship was instituted. Both it and the corn sheller are stored on the 240 acres formerly owned by Laufert and the Wegners. The guardian makes no claim to them. There is no evidence they have been damaged.

X. The guardian paid herself $264.90 for trips from her farm home in Tama County to the hospital in Marshalltown where the ward was confined and for time spent in conferences with him. Some of the trips were at the ward's request. Others the guardian deemed necessary. The court had authorized these trips at the expense of the guardianship. The guardian filed her itemized, verified statement for these items. No abuse of discretion appears in approving this expenditure.

XI. The guardian inadvertently paid some taxes on real estate the ward deeded to his relatives which the grantees should have paid. They did reimburse the guardian therefor. The trial court charged the guardian with interest at five per cent ($18.71) on this amount from the time of payment to the time of reimbursement. In view of this interest charge the guardianship suffered no loss because of this apparently honest mistake of the guardian, and appellant is entitled to no further relief because of it.

XII. We deem it unnecessary to mention a few other objections involving small amounts. We think they and other objections above discussed are insufficient to warrant disturbing the trial court's order. It is therefore—Affirmed.

All JUSTICES concur.