Ralph J. BROWN and Thomas B. Brown, Appellants,

v.

The MONTICELLO STATE BANK OF MONTICELLO, Iowa, Appellee.

No. 86–669.

Supreme Court of Iowa.

March 16, 1988.

---

Robert C. Tilden and Iris E. Muchmore of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

Michael A. Stapleton, Dubuque, for appellants.

LARSON, Justice.

When Howard Brady became seriously ill in 1974, he appointed the Monticello State Bank as his conservator. Approximately two weeks after the appointment, on December 30, 1974, Brady executed a will naming as executors the bank and Thomas Brown, who, with his brother, Ralph Brown, are the plaintiffs in the present case. When Brady died, a simmering disagreement between the bank and Browns erupted into an ongoing legal battle. Several lawsuits developed, and two of them found their way to this court. *See Brown v. Monticello State Bank*, 360 N.W.2d 81 (Iowa 1984); *In re Estate of Brady*, 308 N.W.2d 68 (Iowa 1981).

In the present appeal, the Browns challenge a judgment against them in their suit against the bank for malicious prosecution arising out of the litigation between the Browns and the bank. The bank cross appeals from a judgment for Ralph Brown in his suit against the bank for its alleged conversion of Brady's cattle. We affirm on both appeals.

I. *The Malicious Prosecution Appeal.*

After Brady executed his December 1974 will, he went to Wisconsin to live with the Browns, apparently being unable to care for himself. There, on March 5, 1975, Brady signed a new will which removed the bank as executor. Brady died on March

20, 1975. Browns began Wisconsin probate proceedings on Brady's will of March 5, 1975, and so notified the bank, which commenced Iowa probate proceedings on Brady's will of December 30, 1974. The bank also requested, and received, an order from the Iowa district court to intervene in the Wisconsin proceedings for the purpose of challenging jurisdiction of the Wisconsin court on the grounds of residency. It also challenged the will on grounds of testamentary capacity and undue influence. Throughout the proceedings surrounding the Brady conservatorship and estate, the bank was represented by J.E. Heiserman, an attorney of Anamosa.

The bank lost the issue on residency in the Wisconsin court, which held Brady to be a Wisconsin resident. The bank dismissed its petition of intervention, and the Wisconsin court later held Brady's March 5 will to be valid.

The bank then obtained an ex parte order authorizing it to commence a declaratory judgment in Iowa to determine which will was the last will and testament of Mr. Brady. The bank again raised the issues of residency, lack of testamentary capacity and undue influence. The Iowa court ruled Mr. Brady was an Iowa resident, but agreed with the Wisconsin court that the Wisconsin will of March 5 was valid.

In late 1977, the bank filed its final conservatorship and estate reports and application for fees. Browns objected to these reports and applications. On appeal, these reports and applications were accepted. *See Brady*, 308 N.W.2d at 73.

In July 1978, Browns filed suit against the bank for malfeasance in the administration of the conservatorship and estate, malicious prosecution for filing the December 1975 declaratory judgment action, and conversion of the cattle. The first two claims were dismissed by the district court, leaving only the claim of conversion. On appeal, this court affirmed the dismissal of the malfeasance claim but reversed and remanded on the malicious prosecution claim. *See Brown*, 360 N.W.2d at 88.

Trial was finally held in March 1986 on the malicious prosecution and conversion

claims. The bank prevailed on the malicious prosecution claim, but the jury returned a verdict against it on Browns' conversion claim. Both sides have appealed.

In Browns' appeal, they raise several alleged errors: (1) the court's submission of the bank's defense that it had acted on the advice of counsel, (2) denial of Browns' motion for summary judgment, and (3) refusal to admit certain of Browns' exhibits and limitation of Browns' examination of a witness.

■ The jury found, in response to a special interrogatory, that the bank had established its advice-of-counsel defense. Advice of counsel is a complete defense to a claim of malicious prosecution if the advice is obtained in good faith and if the attorney is given a full and fair disclosure of all facts in the possession of the client. *Liberty Loan Corp. v. Williams*, 201 N.W.2d 462, 465 (Iowa 1972); Restatement (Second) of Torts § 666 (1977).

Browns argue that the defense of advice of counsel is not available to the bank here for two reasons: (1) there is no substantial evidence of the bank's full and fair disclosure of the facts to its attorney; and (2) as a matter of law, an attorney's advice is not a defense if the attorney is a member of the board of directors or a shareholder of the defendant corporation. (It is clear that Heiserman was a director of the bank; it also appears he was a shareholder although that is not clearly established in the record.)

■ We summarily reject the argument that there was not sufficient evidence of a full and fair disclosure of the facts. This is a law action, and we will affirm on a fact question if there is substantial evidence to support the jury's finding. Richard Moore, the bank's trust officer, testified that "a full disclosure was had with Heiserman" about the Brady matters. Heiserman testified, in general terms, about the information given to him by the bank and also related that information gained by him through his own investigations.

The Browns argue that there must be evidence as to what specific facts had been

disclosed to the attorney in order for a client to take advantage of the advice-of-counsel defense. We do not agree; testimony, as here, that a full disclosure had been made is sufficient to support the jury's finding. Any lack of specificity in the testimony as to what facts were disclosed could have been brought out on cross-examination, and any deficiency in the specifics of those facts would bear on the weight of the evidence. We therefore reject this argument.

■ The next question is whether the advice-of-counsel defense is available to a corporation whose attorney is also a director or shareholder of the corporation. This is at the heart of Browns' appeal; they argue that when such a relationship exists between the attorney and client, the advice-of-counsel defense is unavailable as a matter of law.

The general rule is that the advice-of-counsel defense is available only if the attorney is impartial, without prejudice or bias; there cannot be justifiable reliance on the advice of an attorney who has an interest of his own which would be advanced by his advice. *See* 52 Am.Jur.2d *Malicious Prosecution* § 80, at 238 (1970).

We do not believe that the interest of an attorney as a director or shareholder will necessarily preclude the advice-of-counsel defense. It is true that an attorney in those circumstances might gain personally from his client's litigation if it is successful. But, the converse is also true; if the action goes awry because of bad advice from the attorney, the attorney could suffer a personal loss as well. Therefore, we believe it would not be proper to infer from the attorney's relationship as a shareholder or director that his advice to proceed with the litigation is necessarily based on self-interest. Rather, we believe the attorney's interest in the corporation should be considered, along with the other evidence, in determining whether the bank could properly rely on the attorney's advice.

This was the holding of this court in *Charles City Plow & Manufacturing Co. v. Jones*, 71 Iowa 234, 32 N.W. 280 (1887). In that case, the trial court had denied the advice-of-counsel defense on the ground that the attorneys had a similar interest in the corporation. We said:

> By this ruling the court in effect held as a matter of law, that, owing to the relations which the attorneys bore to the corporation, it could not show that it acted on their advice in suing out the writ, in rebuttal of the presumption of malice which might arise from the fact that no probable cause for the action existed. This is erroneous. The question was one of fact. The counsel were not necessarily incapable of giving a correct opinion on the fact because of their pecuniary interest in the result. The question in every such case is whether the party has honestly sought the advice of competent and trustworthy counsel, and acted in good faith on the advice given him; and that question is for the jury, and should be determined by them, like any other question of fact, from all the circumstances of the case.

*Id.* at 239, 32 N.W. at 282 (citing *Center v. Spring*, 2 Iowa 393 (1856)).

We conclude that the district court properly submitted the advice-of-counsel defense notwithstanding the attorney's interest in the corporation. This holding makes it unnecessary to address the Browns' issues concerning the court's refusal to admit their proffered evidence and to give their requested instructions. Because the advice-of-counsel defense was established, it could have made no difference if additional evidence supporting Browns' claim had been admitted. Our holding also makes it unnecessary to address the bank's alternative argument that the court erred in refusing to direct a verdict in its favor. The only issue remaining in Browns' appeal concerns the court's refusal to grant a change of venue, an issue we address in the following division.

II. *The Change of Venue Motion.*

■ Browns moved for a change of venue because they believed the bank had such a pervasive influence in the community that they could not receive a fair trial in Jones County. At the time of the motion,

however, three continuances had been granted, thus limiting the grounds on which a change-of-venue motion could be granted. Iowa Rule of Civil Procedure 168(d) provides that a change of venue will not be allowed "[a]fter a continuance, except for a cause arising since such continuance or not known to movant prior thereto...."

Browns did not allege that their grounds for a change of venue arose after the continuance or that they were unaware of those grounds at the time the continuances were granted. In any event, rulings on change-of-venue motions are largely discretionary. *See* Iowa R.Civ.P. 167. The present case is similar to *Locksley v. Anesthesiologists of Cedar Rapids*, 333 N.W.2d 451, 454 (Iowa 1983), in which we pointed to rule of civil procedure 167 and the wide discretion granted to the district court in rejecting a similar argument.

The district court did not abuse its discretion in denying the motion for change of venue.

### III. *The Cross Appeal.*

■ The bank cross appeals from a judgment in Browns' favor on its claim of conversion of the cattle. After the bank was appointed conservator, it sold the cattle because of difficulty in providing for their care. Ralph Brown, one of the plaintiffs, protested the proposed sale, claiming the cattle had been transferred by a bill of sale dated a month before the conservatorship was opened. Despite Brown's protests, the cattle were sold.

In Brown's conversion suit, the key issue is ownership; were the cattle still owned by Mr. Brady and thus assets in the conservatorship, or had they been transferred to Brown as he claims. The bill of sale and other evidence was presented to the jury, which apparently concluded that the cattle had in fact been transferred to Brown.

The bank also points out that Ralph Brown shared in the conservatorship assets, which included the cattle sale proceeds. It hints, although it does not make it an issue in the appeal, that allowing Brown to recover for the conversion of the cattle amounts to a double recovery. Ralph Brown, the only plaintiff in the conversion suit, claims he alone owned the cattle under his bill of sale. He could not have been made whole through the distribution of the conservatorship assets because he was only one of several distributees. It is reasonable to assume that the jury's verdict ($5000) took that fact into account. In any event, the court's instructions made it clear that double recovery was not to be allowed. The jury was instructed that: "The measure of damages for conversion of the cattle is their fair and reasonable value at the time and place they were sold, *less what the owner(s) received for them through the conservatorship accounting.*" (Emphasis added.)

The conversion claim was properly submitted, and there was sufficient evidence to support the verdict. We therefore affirm on the cross appeal.

AFFIRMED ON BOTH APPEALS.

All Justices concur except HARRIS, J., who dissents from Division III and CARTER, J., who takes no part.

HARRIS, Justice (concurring in part and dissenting in part).

I concur in the majority opinion affirming on the appeal but would reverse on the cross appeal. After the conservatorship was opened cattle which had belonged to Brady were sold and the proceeds were deposited in the conservatorship account. Eventually the proceeds became the property of the plaintiffs.

Ralph Brown's claim to the cattle was based on a bill of sale from Brady. Although the jury was entitled to find it valid, I cannot believe under the circumstances here the bank should be held liable for converting the cattle. Thomas B. Brown, the other plaintiff, testified as follows:

Q. He [Howard Brady] acted as though it was his property, didn't he, when he told you he didn't want them sold? A. As far as we were concerned, and I suppose him too, it was his stuff until he was dead, yes.

With feed running out the bank was forced to sell the cattle. Iowa Code § 633.123 (1987) (duty of conservator to conserve and reinvest the property of the ward with prudence); *In re Guardianship of Laufert,* 247 Iowa 1352, 1361, 79 N.W.2d 187, 193 (1956) (conservator has the duty to exercise care and prudence in management of property). Surely the bank should not be forced to elect between dereliction of a fiduciary duty and liability for conversion.

The trial court should have sustained the bank's motion for a directed verdict in Ralph Brown's conversion action.