**Hon YIP a/k/a Yip Hon, Plaintiff,**

v.

**Clinton L. PAGANO, Defendant.**

**Civ. A. No. 84–3066.**

United States District Court,
D. New Jersey.

April 26, 1985.

Samuel M. Sprafkin, David C. Sprafkin, New York City, and Gomes & Gould by Harris Gould, Newark, N.J., for plaintiff.

Irvin I. Kimmelman, Atty. Gen. of New Jersey by Eugene J. Sullivan, Asst. Atty. Gen. of New Jersey, Nancy B. Stiles, Deputy Atty. Gen. of New Jersey (Argued), Trenton, N.J., for defendant.

Steven R. Ross, Gen. Counsel to the Clerk of the U.S. House of Representatives by Charles Tiefer, Deputy Gen. Counsel to the Clerk (Argued), Michael L. Murray, Asst. Counsel to the Clerk of the U.S. House of Representatives, Washington, D.C., for amicus curiae the Leadership Group of the House Committee on the Judiciary.

COHEN, Senior District Judge:

This defamation action is presently before the Court on the motion of defendant, Colonel Clinton L. Pagano, Superintendent of New Jersey State Police, for summary judgment pursuant to Fed.R.Civ.P. 56(b).

Prior to ruling on this motion, however, we must consider the requests put forth by the Leadership Group of the United States House of Representatives Committee on the Judiciary (the Leadership Group)[1] to appear as *amicus curiae* in this matter and to have the Court waive Local Rule 4(C) which would require that out of state attorneys be admitted *pro hac vice* and appear with local counsel. United States District Court, District of New Jersey General Rule 4(C).

I

This action arises from remarks made by defendant, Colonel Pagano, in his opening statement before the House Subcommittee on Crime (Subcommittee) which, on February 10, 1984, conducted a hearing in Atlantic City, New Jersey concerning the alleged use of casinos to launder profits realized by alleged organized crime members and drug traffickers. In his opening remarks defendant stated that Hon Yip, plaintiff herein, was an alleged international drug smuggler who had laundered nearly $400,000 in two Atlantic City casinos.[2]

On July 26, 1984 plaintiff instituted the instant action in which he seeks $70,000,-000.00 in compensatory damages and $10,-000,000.00 in punitive damages. As the sole basis for the present motion, defendant maintains that statements made before a legislative body are absolutely privileged provided they regard a subject properly within that body's jurisdiction and have some relation to legitimate legislative business. Due to the potential impact that our decision may have on the principles governing the testimony of Congressional witnesses, the Leadership Group seeks the Court's

---

1. The Leadership Group consists of the Honorable Peter W. Rodino, Jr., of New Jersey, and the Honorable Hamilton Fish, of New York, respectively chairman and ranking minority member of the Committee and the Honorable William J. Hughes, of New Jersey, chairman of the Subcommittee on Crime of the House Committee on the Judiciary.

2. In a prepared statement submitted to the Subcommittee prior to the hearing, defendant wrote:

"Yip Hon, an international narcotics smuggler from Hong Kong, China, deposited $110,-000.00 in cash at the Golden Nugget Casino and $280,000.00 at Caesar's Casino." (Plaintiff's complaint ¶ 5).
At the hearing itself, defendant made the same statement except that he inserted the word "alleged" prior to "international narcotics smuggler." (Plaintiff's complaint ¶ 7).

permission to appear as *amicus curiae.* Defendant has submitted a letter brief in support of this request;[3] plaintiff has submitted a brief in opposition.

## II

■ At the trial level, where issues of fact as well as law predominate, the aid of *amicus curiae* may be less appropriate than at the appellate level where such participation has become standard procedure. Accordingly, "the privilege to be heard as an *amicus curiae* rests within the discretion of the court [which] may grant or refuse leave, according as it deems the proffered information timely and useful or otherwise." 3A C.J.S. Amicus Curiae § 3 (1973). *See Leigh v. Engle,* 535 F.Supp. 418 (N.D.Ill.E.D.1982). *Leigh* involved a request by the Secretary of Labor to participate in that matter as *amicus curiae.* There, the court denied the request for two reasons. First, it noted that the Secretary's position was more accurately termed a friend of the plaintiff than a friend of the court. Second, the court expressed its legitimate concern that a grant of the Secretary's request after more than three years of proceedings, of which he had been aware, would cause delay in further consideration of the matter. Such is not the case here. Plaintiff filed his action in July of 1984, less than seven months prior to the Leadership Group's request. With the exception of the summary judgment motion presently before us, there have been very few proceedings to date. In opposing the Leadership Group's motion, plaintiff relies on *Casey v. Male,* 63 N.J.Super. 255, 164 A.2d 374 (Essex County Ct.1960), wherein the Publishers Bureau of New Jersey and the New Jersey Press Association were denied permission to appear as *amici* because they sought to assume an advocatory rather than advisory role. "Where a petitioner's attitude toward the litigation is patently partisan, he should not be allowed to appear as *amicus curiae." Id.* at 259, 164 A.2d 374.

*Casey,* however, is readily distinguishable from the case at bar. In *Casey,* the groups seeking to appear as *amici* represented business interests which would be ultimately and directly affected by the court's ruling on the substantive matter before it. Here, however, the Leadership Group will only be indirectly affected by our ruling on the substantive issue of witness immunity. The Leadership Group's interest in this matter is nonetheless compelling due to the need of the legislative branch of government to readily obtain information in aid of its law making function. Any ruling by this Court limiting the scope of this immunity will affect the ability of Congress to obtain adequate information in an efficient manner. For example, were we to conclude that only statements made by a witness who had been subpoenaed to testify would be within the immunity, Congress would likely be forced to subpoena all of its witnesses, a cumbersome procedure, or rely on information from fewer witnesses. As a result, the goal of formulating legislation on a well informed basis would be impaired.

The brief proffered by the Leadership Group, although in parts adversarial, nonetheless presents a helpful analysis of the law of legislative immunities and of the functions and procedures of Congressional committees. We do not find that those aspects of the Leadership Group's brief which advocate defendant's position so taint it as to outweigh its usefulness. *Cf.*

---

3. In support of his summary judgment motion defendant initially submitted the affidavit of Hayden Gregory, Esquire. Mr. Gregory, who is counsel to the Subcommittee, provided information in his affidavit relative to the circumstances surrounding defendant's testimony. In an attempt to depose Gregory, plaintiff obtained a subpoena which Gregory moved to quash in the district court for the District of Columbia. In order to resolve the dispute over that deposition the parties here have agreed to the withdrawal of the Gregory affidavit. Plaintiff contends, however, that the Leadership Group is attempting to replace the Gregory affidavit with its brief. On the other hand, the Leadership Group maintains that the issue of defendant's desired immunity can be resolved without the Gregory affidavit by reliance only upon the public information it has provided. We note here that our decision on the merits of this motion in no way rests on the Gregory affidavit.

*Keenan v. Board of Chosen Freeholders of Essex Cty.*, 106 N.J.Super. 312, 255 A.2d 786 (App.Div.1969) (expression of opinion as to appropriate outcome by *amicus curiae* is proper). Therefore, we shall allow the Leadership Group to appear as *amicus curiae* on defendant's motion for summary judgment. As *amicus curiae* is counsel to the United States House of Representatives, a coordinate branch of the government, we shall waive the requirements of Local Rule 4(C). *See* United States District Court, District of New Jersey General Rule 4(F) (allowing appearance by attorneys for the United States).

### III

Fed.R.Civ.P. 56(c) provides that summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of demonstrating that there is clearly no genuine issue of fact and all doubts will be resolved against him. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1969); *Janek v. Celebrezze*, 336 F.2d 828, 834 (3d Cir.1964). Once a movant has supported his motion with affidavits or with other evidence as permitted under Fed.R.Civ.P. 56, the party opposing the motion must adduce "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In support of his motion, defendant contends that "statements made before a legislative body on a subject properly within its jurisdiction and with some relation to legitimate legislative business are absolutely privileged." Defendant's Brief at p. 6.

### A

Plaintiff concedes that the absolute privilege noted above exists in the common law of many jurisdictions. We must first consider, however, whether we should apply an absolute privilege under federal or state common law. Only two cases have been published recently dealing with Con-

gressional witness immunity. In the first, *Bio/Basics International Corp. v. Ortho Pharmaceutical Corp.*, 545 F.Supp. 1106 (S.D.N.Y.1982), the district judge thoroughly considered the various requirements for the creation of a federal common law and concluded that the issue of immunity was best determined under state law principles. In the other, *Webster v. Sun Company, Inc.*, 731 F.2d 1 (D.C.Cir.1984), neither the court of appeals nor the district court considered the issue of federal versus state common law. The district judge merely applied what she termed the common law immunity found in the Restatement (Second) of Torts § 590A. Because the court of appeals never questioned the choice made by the district court, *Webster* is uninstructive.

We note at this point the contention of *amicus curiae* that it is unnecessary for us to reach this choice of law issue because both New Jersey and federal common law provide essentially the same privilege. Although we agree with the substance of this contention, we believe it to be more appropriate to establish whether we are applying state or federal common law due to the unclear status of New Jersey's law of legislative witness immunity. *See Rogozinski v. Airstream By Angell*, 152 N.J.Super. 133, 149–50, 377 A.2d 807 (Law Div.1977).

Although there typically exists "no federal general common law," *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), certain exceptions have been recognized. Such exceptions "fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (citations omitted). It is clear that the instant issue of witness immunity does not fall within the latter exception. *See id.* at 641, 101 S.Ct. at 2067; *Bio/Basics*, 545 F.Supp. at 1111. Although the question of whether this issue fits within the exception for the protection of uniquely federal inter-

ests is less clear, *see Webster,* 731 F.2d at 4, we believe that it does not. As in *Bio/Basics,* there are legitimate, yet conflicting policy interests involved in the granting of an absolute privilege for legislative witnesses. As a result, it is impossible to identify a single substantive federal policy that would be served by the creation of a particular substantive rule of federal common law. First of all, there is a distinct need for witnesses to testify without the fear of facing private defamation actions. By allowing an absolute privilege, the legislature will be aided in obtaining full and frank testimony. Conversely, it is essential to protect innocent third parties from misuse of the committee, and its immunity, by unscrupulous witnesses. These conflicting interests "require an independent policy determination for their resolution." *Bio/Basics,* 545 F.Supp. at 1113. Further, "[s]uch an independent policy determination is, absent a paramount federal interest in a uniform rule of law, not to be made by a federal district judge through the creation of federal common law." *Id.* See also *In re Agent Orange Product Liability Litigation,* 635 F.2d 987, 994–95 (2d Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). If a federal rule of law is necessary, we leave it to Congress to enact. Absent such legislation, we shall proceed in an unexceptional manner and apply the substantive laws of the individual states.

## B

■ Having concluded that state law should supply the legal principle in this matter, we now consider whether it is the law of New Jersey, or of some other state, which controls. In deciding this question, we apply New Jersey's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New Jersey has adopted a conflict of law rule in tort cases whereby the courts look "to the law of the jurisdiction 'having the most significant relationship and closest contacts with the occurrence and the parties.'" *Rohm and Haas Co. v. Adco Chemical Co.,* 689 F.2d 424, 429 (3d Cir. 1982) (quoting *Rose v. Port of New York*

*Authority,* 61 N.J. 129, 140, 293 A.2d 371 (1972)).

Although this may be a complicated matter in defamation cases, neither of the parties contends that any state's law other than New Jersey's should apply. Therefore, our consideration of this question shall be brief. We find that the application of New Jersey law is most appropriate due to the following factors: (1) the hearing at which defendant made his statement took place in Atlantic City, New Jersey; (2) each of the casinos mentioned in defendant's statement is located in Atlantic City, New Jersey; (3) defendant is a resident of New Jersey and is the Superintendent of the New Jersey State Police; (4) plaintiff, a citizen of Hong Kong, China, has visited Atlantic City casinos on a number of occasions; and (5) New Jersey has a very substantial interest in the regulation of Atlantic City's casinos and in ensuring that they remain free of the corruption inherent in any involvement with organized crime and the illegal drug trade. Clearly, these factors outweigh any interests which could be put forth relating to other states' policies. We turn now to a determination of the relevant New Jersey law.

## C

■ In his brief supporting his motion, defendant urges this Court to adopt the privilege as it is defined in Restatement (Second) of Torts § 590A which reads as follows:

Witness in Legislative Proceedings.

A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding.

The comment to this section indicates that this privilege is similar in all respects to that granted to witnesses in judicial proceedings and that the comments to that section are applicable to § 590A as well.

It is well established that New Jersey has adopted the Restatement (Second) position relating to judicial immunities. *See*

*Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 N.J. 552, 558, 117 A.2d 889 (1955). Thus, we shall consider the reasons for the adoption of the judicial immunity provision and determine their applicability to legislative hearings. Primary among these reasons is the necessity for full disclosure by witnesses in order to further the administration of justice. The identical reason exists in the present context because it is essential that the legislature be fully informed in order to enact appropriate legislation. *See Eastland v. United States Serviceman's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). Additionally, because of the potential for a judicial body to compel a witness to testify, the need for an absolute privilege becomes all the more necessary. It would be entirely unfair to require one to testify and, as a result, subject him or her to a private suit for defamation. Likewise, the United States House of Representatives has the authority to compel witness testimony thus causing the same potential hardship and resultant necessity for immunity.

Because of the compelling nature of the rationale supporting witness immunity in a judicial setting and the similarity of both the necessity and practicality of the immunity in the legislative setting, we anticipate that the New Jersey Supreme Court would adopt the absolute immunity for statements to legislative bodies being sought by defendant. Finally, we shall consider plaintiff's attempt to pierce this immunity and the factors relevant thereto.

### IV

We find that in order to be absolutely privileged, a statement made to a legislative body must be (1) related to the subject matter (2) of legislative proceedings (3) which are either (a) being conducted or (b) being contemplated in good faith, and (4) which are within the jurisdiction of the legislative body conducting them.

Plaintiff contends that defendant has lost this absolute privilege because he voluntarily appeared at the hearing and made the defamatory statement without being placed under oath. Moreover, plaintiff maintains that defendant's statement was not made in response to any specific question and bore no relation to the subject matter of the hearing. We note that none of these contentions raise factual issues which would render summary judgment inappropriate.

Even though the Subcommittee has the ability to compel testimony from witnesses, it is not necessary that a witness be subpoenaed in order to receive the protection of the privilege. *See* Restatement (Second) of Torts § 588, Comment c. *See also Webster*, 731 F.2d at 4 (unsolicited statements); *Bio/Basics*, 545 F.Supp. at 1108 (specific request that someone from Ortho testify). Were we to conclude that testimony was privileged only when compelled, we would impose a very significant burden upon both the legislature and potential witnesses. The instant case is factually similar to *Bio/Basics* where there was a specific request for testimony from Ortho Pharmaceutical but no individual was named in the informal request. *Id.* In the instant case, the Subcommittee initially invited Lt. Colonel J.J. Dintino, currently Deputy Superintendent of the State Police, to testify. Dintino informed defendant, his superior, of this request who then determined that he was the proper individual to appear at the hearing. (Pagano Affidavit ¶ 2). Therefore, plaintiff cannot contend that defendant's testimony was entirely unsolicited. Nevertheless, provided that all other relevant factors are satisfied, even unsolicited statements to a legislative body should be privileged. *See Webster*, 731 F.2d at 4.

We conclude, as well, that the fact that defendant was not under oath at the time he made his statement is not dispositive. *See* Restatement (Second) of Torts § 588, Comment b. It would be arbitrary and illogical to require that a witness be placed under oath in order to obtain the privilege while allowing his unsworn statements, communicated to the legislature prior to its hearing, to be privileged. Likewise, we find it irrelevant that defendant's statement was not made in response to a specific question. *Id.* at Comment c. Any potential for abuse caused by allowing witnesses to make statements prior to any question-

ing is countered by the relevancy requirement which is central to the privilege itself. We note also that any abuse of the immunity by unsworn witnesses is likely to be tempered by their sincere desire to be recognized as knowledgeable and credible in their testimony. Such legitimate desires strongly support the allowance of the privilege despite the lack of an oath.

■ Finally, plaintiff contends that the statement made about him was "not relevant to the Subcommittee's inquiry and [that] such lack of relevancy was conceded when the Subcommittee granted" defendant's request that all reference to plaintiff be removed from the record. Plaintiff's brief at 1. As with the relevancy requirement in judicial immunity cases, the standard here is not of "technical legal relevancy, such as would, necessarily, justify insertion of the matter in a pleading or its admission into evidence, but rather *a general frame of reference and relationship to the subject matter of the action*." *Fenning v. S.G. Holding Corp.*, 47 N.J.Super. 110, 118, 135 A.2d 346 (App.Div.1957) (emphasis added). The issue of relevance is one for the trial court's determination. *Id.* at 119, 135 A.2d 346. *Cf. Webster*, 731 F.2d at 5 ("So long as the statement has some objective pertinence to the legislative issue it was meant to address, it meets the [relevancy] ... test.")

Within the jurisdiction of the Subcommittee on Crime are the following areas: "Prevention of Crime, Drug Enforcement, Problems of Criminal Offenders, other appropriate matters as referred by the Chairman, and relevant oversight." Rule VI(a)(6), Rules of the Committee on the Judiciary. In furtherance of its obligation to investigate matters within its jurisdiction and to make legislative recommendations to the Judiciary Committee, the Subcommittee

held the February 10, 1984 hearing in Atlantic City, New Jersey. The subject matter of the Subcommittee's inquiry is best summarized in the opening statement of Subcommittee Chairman Hughes which, in pertinent part, follows." [4]

The subcommittee on crime this morning is examining a situation that is of great importance not only to the people of New Jersey, but this country: the alleged use of our casinos by elements of organized crime and drug traffickers to launder the profits of their crimes.

To understand what this hearing is about, it is important to realize a crucial fact about drug trafficking and organized crime. The enormous volume of money generated by these criminal enterprises cannot simply be pocketed by the criminals. The money seems to come in faster than it can be spent. Spending large sums of cash by persons such as drug traffickers, who are without any visible means of support, often generates suspicion.

The goal of every major criminal is to create an ostensibly legitimate source for the wealth they are acquiring and spending, and to invest the proceeds in legitimate as well as illegitimate enterprises. This is the essential objective of money laundering and its importance has been recognized by organized crime experts for decades....

The regulations of the Treasury Department do not place upon casinos the responsibility of reporting these transactions of more than $10,000. Over the last year, however, the Treasury Department has been studying this exemption, and discussing ways to end it....

This hearing is designed to look into the problem of money laundering

---

4. The United States Supreme Court has used the opening statement of the Committee chairman as a guide in determining the subject of the hearing inquiry. *See Hutcheson v. United States*, 369 U.S. 599, 601–603, 82 S.Ct. 1005, 1006–1007, 8 L.Ed.2d 137 (1962).

In addition to Chairman Hughes' opening statement, *amicus curiae* has provided us with a report on the *Money Laundering Penalties Act of 1984*, H.R.Rept. No. 984, 98th Cobng., 2d Sess.,

Part 1 (1984), wherein the Judiciary Committee identified the subject of the Atlantic City Hearing:

the Committee has investigated the problems of the *significant volume of currency transactions at gaming casinos* (which are not currently subject to the reporting requirements) *involving the proceeds of drug trafficking* and other criminal activity.

*Id.* at 3. (emphasis added).

through casinos, and how best it can be solved. We want to know what the impact is on New Jersey and the Nation of the availability of the casinos for organized crime figures and/or traffickers to use to launder their cash. We want to know what the Treasury Department, after a year of study, is going to propose that will close the money laundering loophole that the reporting exemption for casinos has created. We want to know what the effect upon the casino industry might be if the reporting requirements are implemented. . . .

*Hearings before the Subcommittee on Crime of the House Committee on the Judiciary,* 98th Cong.2d Sess. 1–4 (1984).

There can be little doubt, after reading this opening statement, that defendant's remarks were relevant to the subject matter of the hearing. The Subcommittee met to consider the use of casinos by members of organized crime and drug traffickers as a means to launder their profits. In commencing his testimony, defendant read a brief statement wherein he related instances where a dozen individuals, including plaintiff, deposited cash in various Atlantic City casinos with the purpose of laundering it. Defendant also identified each of these individuals as either a member of organized crime or a narcotics trafficker. Such specific examples of money laundering are entirely within the subject of the Subcommittee's inquiry and are, thus, absolutely privileged.

Plaintiff, not surprisingly, maintains that the statement concerning him was irrelevant which, he contends, was conceded when it was removed from the hearing record at defendant's request. We disagree. Defendant sought to have all reference to plaintiff stricken from the record in response to plaintiff's request and in an attempt to obtain a general release from liability. These are legitimate tactical reasons for removal which, given the cumulative nature of defendant's statement relating the activities of eleven other individuals, do nothing to detract from the statement's relevance to the Subcommittee's hearing.

When asked at oral argument whether defendant's statement would be relevant if true, plaintiff's counsel maintained that the Court's question was irrelevant because Pagano's statement was, in fact, false. Counsel has missed the point of the question and the import of the absolute privilege. Certainly, where an absolute privilege is claimed, the truth or falsity of a statement is immaterial. If truth were the only factor which made a statement relevant, and thus within the ambit of the privilege, there would be no need for the privilege at all as, in most instances, truth is a complete defense to a defamation action. *See* W. Prosser, Law of Torts § 116 at 797 (4th Ed.1971). The central principle of the privilege is to *tolerate* defamatory remarks in order to further interests which are, on balance, of greater importance to the overall legislative, or judicial, design than are those interests which would favor the imposition of liability.

We conclude that Col. Pagano's statement pertaining to Hon Yip related to the subject matter of the legislative proceedings being conducted in Atlantic City, New Jersey and that these proceedings were well within the jurisdiction of the House Subcommittee on Crime. We are aware that summary judgment is an extraordinary remedy which is granted only infrequently by the courts. However, in a case such as this, where there are no factual issues in dispute and a solely legal issue is presented for disposition, summary judgment is appropriate. Defendant's motion shall be granted.

The Court shall enter an appropriate order.