St. Louis v. Eldredge, et al.          CV-95-178-B     03/31/97

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


**Vincent St. Louis**

    **v.**                                                       95-178-B

**Carleton Eldredge, et al.**



**MEMORANDUM AND ORDER**


Vincent St. Louis asserts state law claims for defamation, malicious prosecution, abuse of process and negligent investigation against (1) the City of Portsmouth, (2) William Burke, the City's Police Chief, (3) Robert Sullivan, the City Attorney, (4) Sharon Cuddy, the Assistant City Attorney, and (5) William Wagner, the Assistant Mayor.[1]  The defendants now move for summary judgment.  For the reasons described below, I grant their motion.

---

[1]  I disposed of St. Louis's federal civil rights claims against these same officials in January 26, 1996 and March 31, 1997 orders.

# I.  BACKGROUND[2]

St. Louis owns and operates the Spaulding Book and Video Store in Portsmouth, New Hampshire.  Spaulding distributes pornographic books and videos and also maintains booths where the videos can be viewed on site.

Spaulding encountered significant opposition from the time it opened for business in April 1993.  One of Spaulting's abutters, Janice Wood, unsuccessfully challenged Spaulding's occupancy permit and the Portsmouth City Council considered, but ultimately declined to adopt, a comprehensive anti-pornography ordinance that would have put Spaulding out of business.  During debate on this ordinance, Assistant Mayor Wagner allegedly stated that the city should "do whatever it takes to shut [Spaulding] down."  He also allegedly stated that St. Louis had obtained his original operating permit through lies and obfuscation.

In response to this public pressure, defendant Carlton Eldredge, who was then Rockingham County Attorney, formed a task force of law enforcement officials in May 1993 to investigate Spaulding and other sexually explicit businesses in Portsmouth.

---

[2]  The facts recited here are taken from the parties' submissions in support of their pleadings.  As is required with a motion for summary judgment, I construe the facts in the plaintiff's favor but make no findings on any disputed facts.

Task force members made undercover visits to Spaulding and several other stores and collected evidence indicating that sexual acts were being performed on the premises. As a result, Eldredge filed an equity petition in Rockingham County Superior Court in July 1993, seeking to have Spaulding and other similar businesses closed as public nuisances.

In September 1993, Janice Wood and a group of other citizens formed the "Citizens Community Standards Committee of Rockingham County." The committee declared that its first project would be "to insist upon enforcement of the laws prohibiting the sale of obscene magazines, videos, and other materials." On September 27, 1993, Portsmouth Police Chief William Burke sent the Rockingham County Sheriff and other chiefs of police in Rockingham County an invitation to attend the committee's October 26, 1993, meeting. Both Burke and Eldredge later attended the meeting.[3]

On October 4, 1993, the Portsmouth City Council passed an ordinance entitled "Adult-Oriented Establishments." This ordinance requires that every "adult-oriented establishment" be well-lighted and that the interiors of video viewing booths be

_____

[3] The record contains no evidence concerning what occurred at this meeting.

"clearly visible" from the common areas of the establishment. The ordinance also prohibits doors and other obstructions that would block visibility into video viewing areas. City Attorney Robert Sullivan assisted the council in drafting the ordinance.

On August 31, 1994, Assistant City Attorney Sharon Cuddy wrote a letter to Spaulding's attorney demanding that Spaulding comply with its parking plan. Cuddy conceded in a subsequent letter that the city could not base an enforcement action on Spaulding's failure to comply with the plan. However, she intimated that Spaulding might become the subject of an enforcement action or litigation commenced by Wood if it allowed its patrons to back out onto a city street or otherwise interfere with a right-of-way.

On January 6, 1994, Portsmouth Police Detective Albert Kane, working under Eldredge's direction, purchased a sexually explicit videotape from Spaulding entitled "Colossal Combo." Eldredge then asked the Portsmouth Police to file a criminal obscenity misdemeanor complaint against St. Louis, which they did. Assistant County Attorney Robert E. Ducharme of the Rockingham County Attorney's Office led the prosecution team, and Eldredge appointed Bruce Green, a private lawyer affiliated with an anti-pornography organization, to act as an assistant prosecutor

4

in the case. A newspaper reported that Eldredge said that the prosecution was "the first step in a deliberate calculated plan to drive porn stores out of business . . . ." Nevertheless, in February 1995, a New Hampshire jury found St. Louis not guilty of misdemeanor obscenity charges.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if the facts taken in the light most favorable to the non-moving party show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 36-37 (1st Cir. 1995). <u>cert. denied</u>, 116 S. Ct. 914 (1996). A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When the nonmoving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." <u>Celotex Corp. v. Catrett</u>, 477 U.S.

5

317, 322-23 (1986).  It is not sufficient to "rest upon mere allegation[s] or denials of his pleading." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, 477 U.S. at 256).  Rather, to establish a trial-worthy issue, there must be "enough competent evidence to enable a finding favorable to the nonmoving party." Id. at 842 (citations omitted).  In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the nonmoving party's favor. Anderson, 477 U.S. at 255.

## III. ANALYSIS

Defendants Burke, Sullivan, Cuddy, Wagner, and the City of Portsmouth move for summary judgment on the state law claims of defamation (against Wagner), malicious prosecution (against Sullivan, Burke, and the City of Portsmouth), abuse of process (against all city defendants), and negligent investigation (also against all city defendants).  St. Louis voluntarily dismissed his negligent infliction of emotional distress claim.

### A. Defamation

St. Louis alleges that he was defamed by defendant Wagner for statements he made during a meeting of the Portsmouth City Council on April 19, 1993.  Specifically, Wagner stated that St.

6

Louis had obtained his building permit by lying and through obfuscation.  New Hampshire has not yet decided whether members of local legislative bodies are entitled to absolute immunity or to qualified immunity for statements made during and pertinent to legislative meetings.  However, I conclude that the New Hampshire Supreme Court would follow the Restatement (Second) of Torts § 590 (1977), and accord absolute immunity from liability for defamation to city councillors for statements made in the performance of their legislative functions.  Cf. Hayhurst v. Timberlake, No. CV-94-199-SD, slip op. (D.N.H. July 8, 1996) (Devine, J.) (deciding that New Hampshire precedent and the authority of decisions from other jurisdictions make it clear that absolute immunity would apply in the case of private citizens submitting material to the New Hampshire state legislature).

Absolute privileges are generally reserved for those situations where "the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." Supry v. Bolduc, 112 N.H. 274, 276 (1972) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 114, at 776, et seq. (4th ed. 1971)).  In New Hampshire, statements made in the course of judicial proceedings

constitute one such situation, provided that they are pertinent to the subject of the proceeding.  See McGranahan v. Dahar, 119 N.H. 758, 762-63 (1979) (citing cases and Prosser and Keeton, supra, § 114, at 777-78).  This is because the potential harm inflicted on the defamed individual "is far outweighed by the need to encourage participants in litigation, parties, attorneys, and witnesses, to speak freely in the course of judicial proceedings."  Id. at 763 (citations omitted).

Many states also recognize absolute immunity for statements made in the course of legislative proceedings.  See, e.g., W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 114, at 820 (5th ed. 1984) (and cases cited); Webster v. Sun Co., 731 F.2d 1, 4 (D.C. Cir. 1984); Yip v. Pagano, 606 F. Supp. 1566, 1570-73 (D.N.J.), aff'd, 782 F.2d 1033 (3d Cir. 1985); Bio/Basics Int'l Corp. v. Ortho Pharm. Corp., 545 F. Supp. 1106, 1114-15 (S.D.N.Y. 1982).  In addition, many states extend absolute immunity from state legislatures to members of subordinate legislative bodies to which the state has delegated legislative power, such as a city council or a county board.  See, e.g., Restatement (Second) of Torts § 590 cmt. c (1977); Prosser and Keeton, supra, § 114, at 820-21 (and cases cited); Sanchez v. Coxon, 854 P.2d 126, 130 (Ariz. 1993); O'Donnell v. Yanchulis,

8

875 F.2d 1059, 1063 (3d Cir. 1989) (construing Pennsylvania law); Noble v. Ternyik, 539 P.2d 658, 660 (Or. 1975).  Although the minority view is that members of local legislative councils are sufficiently protected by a qualified or "conditional" immunity standard, see Restatement (Second) of Torts § 590 cmt. c (1977), the "trend of judicial decisions and legal thought is to extend the absolute privilege to communications of members of lesser legislative bodies."  Noble, 539 P.2d at 660.

The modern trend is supported by numerous policy factors which demonstrate that the public interest in extending absolute immunity to local legislative bodies is "so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives."  Cf. Supry, 112 N.H. at 276.  For example, because local legislators often receive little or no compensation for their services, a qualified privilege, as opposed to an absolute privilege, would serve as a deterrent to attracting qualified citizens to public service.  Noble, 539 P.2d at 661.  Moreover, a qualified immunity, which hinges on the existence of malice, "would compel judicial inquiry into the motives for statements made by council members during often heated debates.  Such an intrusive and probing inquiry would come at too high a cost in light of its chilling effect."  Sanchez,

9

854 P.2d at 129-30. Indeed, this chilling effect could dissuade city councillors from bringing pertinent knowledge, vital to reaching an informed legislative decision, to the attention of their legislative bodies, because the publication of this information might expose them to lawsuits. Noble, 539 P.2d at 661. Finally, the need for municipal legislators to speak candidly and freely about issues pending before them would be severely undermined by the lesser protection of a qualified immunity standard.

The legislators serving in the New Hampshire state legislature enjoy absolute immunity for defamatory statements made during legislative debate. N.H. Const. pt. 1, art. 30. There is no persuasive reason why municipal legislators should be more inhibited in debate than state (or federal) legislators. Because "local law-makers receive little or no compensation and, at times, legislate on matters of more immediate importance to their electorate than state or federal legislators," municipal law-makers should be presented with all relevant information and allowed to debate as vigorously as possible. Sanchez, 854 P.2d at 130; see also, Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 23 (1st Cir. 1992).

For these reasons, I predict that the New Hampshire Supreme Court would recognize that local legislators are absolutely privileged from liability for defamation based on statements made in the performance of their legislative functions. Because New Hampshire has delegated legislative power to the Portsmouth City Council, see N.H. Rev. Stat. Ann. § 44:3 (1991); Eaton v. Burke, 66 N.H. 306, 313 (1890), and because Wagner's statement was related to the council's legislative functions and made during the course of the council's legislative debate, I dismiss St. Louis's defamation count against Wagner.

B.   **Malicious Prosecution**

St. Louis claims that defendants Sullivan, Burke, and the City of Portsmouth are liable for malicious prosecution. To prevail, St. Louis must prove "that [i] he was subjected to a criminal prosecution, [ii] instituted by the defendant, [iii] without probable cause and [iv] with malice, and [v] the criminal proceeding terminated in his favor." Hogan v. Robert H. Irwin Motors, Inc., 121 N.H. 737, 739 (1981) (quoting Stock v. Byers, 120 N.H. 844, 846 (1980); in turn quoting Robinson v. Fimbel Door Co., 113 N.H. 348, 350 (1973)).

In order for a defendant to be found to have initiated charges against a person, he must have taken some formal action

to institute such charges. <u>Blenn v. Morrill</u>, 90 N.H. 109, 111 (1939). As St. Louis has presented no evidence to contradict Sullivan's sworn statement that he did not participate in the initiation of criminal charges against St. Louis, the malicious prosecution claim against him necessarily fails.

St. Louis's malicious prosecution claims against Chief Burke and the city are also flawed because St. Louis lacks sufficient evidence to support his claim that the police department acted without probable cause. In the malicious prosecution context, probable cause has been defined as "such a state of facts <u>in the mind of the [accuser]</u> as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person [charged] is guilty." <u>Stock</u>, 120 N.H. at 846 (emphasis added, citations omitted). Reasonable reliance on the advice of an attorney in instituting charges is conclusive on the issue of probable cause as long as the attorney's advice is sought in good faith and the accuser makes full disclosure of the relevant facts to the attorney. Restatement (Second) of Torts § 666 (1977); <u>Brown v. Monticello State Bank</u>, 420 N.W.2d 475, 777 (Iowa 1988). The record in this case is uncontradicted that the Portsmouth Police Department was acting under the direction of the Rockingham County Attorney's Office when it investigated St.

12

Louis and initiated the criminal charges against him. No evidence has been produced to support a claim that any of the city employees involved in the case sought the county attorney's guidance in bad faith. Nor has St. Louis presented any evidence to suggest either that the police department withheld relevant information from the county attorney's office or that anyone in the department knew that the county attorney's instruction to prosecute was tainted by an improper personal motivation. Under these circumstances, neither Chief Burke nor the city council can be held liable for malicious prosecution.

## C. Abuse of Process

St. Louis brings abuse of process claims against all defendants. To succeed with those claims, St. Louis must show that the defendants (i) used legal process, whether civil or criminal, (ii) against him, (iii) primarily to accomplish a purpose for which it is not designed, and (iv) caused harm to him by that abuse of process. Long v. Long, 136 N.H. 25, 29 (1992). The defendants move for summary judgment, asserting that St. Louis cannot produce any evidence that the defendants other than Burke used legal process against him, and that Chief Burke cannot, as a matter of law, be found to have used legal process

13

against St. Louis primarily to accomplish a purpose for which it is not designed.

St. Louis contends that the statements and actions of Sullivan, Cuddy and Wagner demonstrate a desire to close down his book and video store in disregard of his constitutional rights. He also describes various efforts they undertook to pass and enforce zoning ordinances which interfered in his business operations. To succeed in an abuse of process claim, however, St. Louis must show that the defendants caused process to issue against him, and this process must "emanate from or rest upon the authority or jurisdiction of a court." Id. at 30-31 (citation omitted) (noting that abuse of process requires "an act done in the name of the court and under its authority for the purpose of perpetrating an injustice"). The only legal process St. Louis has identified in this case is the process which compelled him to defend himself from criminal prosecution. St. Louis has produced no evidence that Sullivan, Cuddy, or Wagner were involved in causing process to issue in relation to his obscenity prosecution. Therefore, I dismiss the abuse of process claim against them.

Chief Burke seems to acknowledge that the initiation of a criminal complaint against St. Louis satisfies the "process"

14

prong of the abuse of process tort. He argues, however, that as a matter of law, St. Louis has not produced enough evidence for a reasonable jury to find that he caused process to issue for primarily an improper purpose. It is undisputed that Burke's act of initiating a criminal complaint against St. Louis, from which process emanated, was performed at the direction of the Rockingham County Attorney's Office. In addition, St. Louis has presented no evidence which contradicts Burke's assertion that he acted out of deference to that office's determination that probable cause existed to charge him. As a result, it cannot be said that Burke caused process to issue against St. Louis for any reason other than to enforce New Hampshire's obscenity laws. Because this reason is not improper, I dismiss St. Louis's abuse of process claim against Burke and the City of Portsmouth.

## D.  Negligent Investigation[4]

St. Louis alleges negligence by all defendants in their investigation of his bookstore for violation of New Hampshire's obscenity laws. The city defendants move for summary judgment, arguing that St. Louis's alleged damages flow from his

_____

[4] The parties do not argue, and therefore I need not decide, whether New Hampshire recognizes a tort of negligent investigation.

prosecution, not his investigation. Without addressing the merits of this argument, however, I dismiss the negligent investigation count against defendants Sullivan, Wagner, and Cuddy, because St. Louis has produced no evidence, and has not even specifically alleged, that these defendants were involved in the investigation of his store for violations of New Hampshire's obscenity laws.

Chief Burke, of course, was involved in the investigation of St. Louis. The breach of duty which St. Louis alleges, however, was that Burke failed to responsibly determine whether the video obtained from his store satisfied the constitutional and statutory standards for obscenity. Although Burke's agents obtained the video, the police turned it over to the Rockingham County Attorney's Office for the determination of whether probable cause existed that the sale of the video constituted a violation of New Hampshire law. Given the undisputed fact that Burke properly placed the video in the hands of officials trained and experienced to make the intricate legal determination whether it met the definition of obscenity, no reasonable juror could find that Burke breached the duty he owed to St. Louis. I therefore dismiss the negligent investigation claim against Burke and the City of Portsmouth on the ground that no reasonable juror

16

could conclude from the plaintiff's evidence that Burke acted negligently in relying on Eldredge's judgment that the video obtained from St. Louis's store was obscene.

## IV. CONCLUSION

For the forgoing reasons, the Portsmouth defendants' motion for summary judgment (document no. 39) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Court

March 31, 1997

cc:  Brian T. Stern, Esq.
     Donald E. Gardner, Esq.
     William G. Scott, Esq.

17